**UNIVERSITY OF PENNSYLVANIA,**
Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (HICKS),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 25, 2011.

Decided April 5, 2011.

Howard J. Burk, Jonathan B. Sprague and Karyn Dobroskey Rienzi, Philadelphia, for petitioner.

Larry Pitt, Philadelphia, for respondent Andre Hicks.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

The University of Pennsylvania (Employer) has filed a petition for review from an order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) denying Employer's suspension and termination petitions because it found that Andre Hicks' (Claimant) loss of earning power was related to his work-related injuries and not due to his criminal convictions. For the reasons that follow, we affirm the Board's decision.

Claimant was employed as a campus police officer and SWAT team member for Employer when he was injured in a car accident on June 25, 2006, in the course and scope of his employment. He suffered a cervical and low back strain and an aggravation of pre-existing degenerative joint disease/facet arthropathy resulting in a right lumbar radiculopathy. Claimant began receiving benefits pursuant to a notice of compensation payable.[1] On December 12, 2007, Employer filed a suspension petition alleging that as of December 3, 2007, Claimant's wage loss was due to his post-injury conduct leading to criminal convictions. Specifically, Claimant was convicted of second degree misdemeanors for endangering the welfare of children, criminal conspiracy to commit this offense and simple assault, and he was sentenced to a period of incarceration of not less than six months and not greater than 23 months.[2] He was incarcerated from December 3, 2007, through December 14, 2007, when he was released on bail pending appeal of his convictions. Employer also filed a termination petition alleging that Claimant had fully recovered from his work-related injuries.

At the hearing before the WCJ, Employer presented expert medical testimony by Leonard Brody, M.D. (Dr. Brody), a board-certified orthopedic surgeon, who examined Claimant once on April 2, 2008, and was told by Claimant that he suffered a car accident while on the job. He was further told by Claimant that he was treated at the Hospital of the University of Pennsylvania and released and had been

---

1. Claimant attempted to return to light-duty work with Employer and his benefits were reduced to partial benefits, but he again stopped working and his total disability benefits were reinstated. He has not returned to any work since September 2007.

2. Claimant testified regarding the circumstances leading up to his convictions stating that his wife asked him if he agreed with her that she should spank her 12–year old biological daughter because his step-daughter had called one of her caregivers a fat pig and was being very disrespectful. He agreed to the spanking, and his wife spanked her with a belt outside of his presence leaving bruises on her legs. When a neighbor saw the bruises, the police were called, and he and his wife were both charged with multiple crimes.

under several other doctors' care since that time. Dr. Brody said Claimant told him that he no longer had any neck complaints and that he had good days and bad days with his back. Dr. Brody stated that he performed numerous tests on Claimant which indicated, among other things, that there were no motor sensory deficits in the arms, a full range of motion in all planes of the low back, no evidence of paralumbar muscle spasm, no sciatic notch tenderness and no motor sensory deficits in the legs. Dr. Brody opined that Claimant had a normal exam of both the cervical and lumbar spine, and that he had fully recovered from his injuries and could return to work with no restrictions.

Claimant offered the expert medical testimony of Norman Stempler, D.O. (Dr. Stempler), Claimant's treating physician, who stated that he first saw Claimant in June 2006 when he was injured in the car accident and had been treating him ever since with therapy and medication with the exception of when he was incarcerated. He testified that Claimant's complaints of chronic low back pain and spasms had been consistent since his first exam, and that he did not believe he could perform his job duties of a campus police officer. Dr. Stempler diagnosed Claimant with chronic lumbosacral musculoligamentous injury and chronic sacroilitis and right lumbar radiculitis. Dr. Stempler opined that Claimant had not fully recovered and could not perform his job duties as a campus police officer, but possibly could perform some work pending his review of a specific job description.

Claimant testified that his job as a campus police officer included apprehension of criminals and suspects and foot and vehicle patrol. He also served warrants and did a

lot of strenuous physical training with long arm guns. He did not believe that he was able to return to work due to his continuing pain and injuries and that Employer had not offered him a light-duty position since he last worked as a police officer.

Testifying for Employer was Captain Gerald Leddy (Captain Leddy), the Commanding Officer of the Staff and Administrative Services Unit, who stated that he had been employed by Employer for 26 years and he was responsible for, among other things, certification and qualification issues for Employer's police officers. He testified that Employer's Police Department was governed by the Municipal Police Officers Education and Training Commission (MPOETC), and the statutes associated with that Commission governing qualifications and certification of police officers.[3] Captain Leddy stated that the statute required that if a police officer was convicted for a crime, then it was a disqualifying conviction that would render the police officer's certification void. Further, if the police officer had an arrest or conviction, Employer was required to inform MPOETC within 15 days of notification of the arrest or conviction. Captain Leddy stated that Employer provided notice to the MPOETC following Claimant's arrest and offered into evidence Employer's letter to the MPOETC to that effect.

Captain Leddy further testified that as a result of Claimant's criminal convictions, Claimant was not eligible for re-employment as a police officer with Employer and that he could not be certified at this point in time. Captain Leddy stated that it was his belief that the Commonwealth revoked a police officer's certificate number once

---

**3.** Captain Leddy was referring to 53 Pa.C.S. §§ 2161–2171, statutes relating to the MPOETC.

the police officer was convicted and the disqualification was triggered by the conviction. When asked if a police officer could be recertified if he were to appeal his convictions and was successful on appeal, Captain Leddy said, "Yes, but I'm not confident. It would be up to the municipal police officer's training commission." (June 6, 2008 Deposition Testimony at 11.) When asked if there was any way to get re-certified when a police officer was convicted and did not appeal the conviction, Captain Leddy stated that he believed the conviction would last in perpetuity.

Claimant's criminal sentencing hearing transcript was offered into evidence where he was asked "Would you be able to return to work after what's happened here in Court?" and he responded, "No, I will not be able to return to work." (Reproduced Record at 223a.)

Finding Dr. Stempler's testimony to be credible and convincing and Dr. Brody's testimony unpersuasive, the WCJ found Claimant had not fully recovered from his work injury and denied the suspension and termination petitions. The WCJ also was not persuaded by the evidence that Claimant's loss of earning power was for reasons unrelated to his work incident stating:

> In this regard, the Employer did not present any evidence of record that the Claimant's certification for his pre-injury position had been revoked at any time relevant hereto or that his employ-

ment had been terminated by the Employer as a result thereof. To the extent that Captain Leddy's testimony was inconsistent with the statutory provisions related to the MPOETC, it is not found to be persuasive. The statutory provisions provided by the Employer related to the MPOETC do not provide for an automatic revocation of the Claimant's certification or the need for recertification based on the Claimant's conviction. Rather, the statute, at Section 203.14, invests the Commission with the right to revoke the certification after notice and an opportunity to be heard. The evidence of record does not show that this has occurred related to the Claimant's certification.

(WCJ's June 15, 2009 decision at 9.) Employer appealed the WCJ's decision to the Board arguing that the WCJ erred in denying the petitions as a result of Claimant's criminal convictions which were pending on appeal.

■ The Board stated that although Captain Leddy testified that he believed that if the appeal of a conviction were successful, a police officer could be recertified, Section 306(a.1) of the Pennsylvania Workers' Compensation Act (Act)[4] would disqualify Claimant for benefits for the period for which the employee was incarcerated. However, Claimant was not incarcerated during the time in question.[5] The Board then stated:

> Although Claimant had been convicted and sentenced to incarceration, he was not in fact "incarcerated" during the ending of his appeal, and is therefore not disqualified because he was not incarcerated during the relevant time involved in the case before the Board and we are constrained to find that Section 306(a)(a2) is inapplicable during the period relevant to these appeals because he was not in fact incarcerated, (Dep. Captain Gerald Leddy, 6/6/08, pp. 4–11).

4. Act of June 2, 1915, P.L. 736, *as amended,* as added by the act of June 24, 1996, P.L. 350, 77 P.S. § 511.1. That section provides: "Nothing in this act shall require payment of compensation under clause (a) or (b) for any period during which the employe is incarcerated after a conviction or during which the employe is employed and receiving wages equal to or greater than the employe's prior earnings."

5. The Board explained:

We are constrained to agree with the Judge. Defendant presented no evidence that Claimant is currently prohibited from work due to a conviction. Claimant has been incarcerated for only eleven days. While Defendant could suspend Claimant's benefits for that period, there is no authority for a suspension under the situation that presently exists.

(Board's September 21, 2010 decision at 4.) The Board then entered an order affirming the WCJ's decision denying Employer's suspension and termination petitions, and this appeal by Employer followed.[6]

■ Employer again contends that the Board erred in affirming the WCJ's decision because the undisputed evidence established that Claimant's wage loss was caused by factors unrelated to the work injury, i.e., Claimant's post-injury criminal conduct and the resulting convictions.[7] Employer first argues that Claimant acknowledged that he was no longer eligible for his pre-injury position as a campus police officer due to his criminal convictions, an admission that established that Claimant's loss of wages resulted from his criminal convictions, not his work injury. Further, Captain Leddy testified that Claimant was not eligible for re-employment as a campus police officer due to his criminal convictions. Employer argues that their testimonies support a finding that Claimant's wage loss was caused by his convictions and not his work injury, and it is entitled to a suspension of Claimant's wage loss benefits. Employer also argues that the WCJ erred in requiring notice and a hearing to prove that Claimant lost his certification as evidenced by 37 Pa.Code § 203.14 which does not mandate those requirements.

■ In response to Employer's first argument, it was Employer's burden to prove that Claimant's wage loss was due to something other than his work-related injury. Here, the WCJ rejected Employer's medical expert's testimony that Claimant had fully recovered from his work injury as less than credible, and found Claimant's medical expert that he could not return to work as a campus police officer most credible.[8] Based on that finding that Claimant is unable to perform his pre-injury job, his

---

(Board's September 21, 2010 decision at 4.)

**6.** Our scope of review of the Board's decision is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated or whether an error of law was committed. *Repash v. Workers' Compensation Appeal Board (City of Philadelphia)*, 961 A.2d 227 (Pa.Cmwlth.2008).

**7.** Section 413 of the Act, 77 P.S. § 772, provides, in relevant part:

A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has in-creased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed ... And provided further, That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, *unless it be shown that the loss in earnings does not result from the disability due to the injury.* (Emphasis added.)

**8.** The WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight. *Newcomer Products v. Workers' Compensation Appeal Board (Irvin)*, 826 A.2d 69 (Pa.Cmwlth.2003). Even though Claimant's expert stated that he could return to modified duty, no work was made available to Claimant by Employer.

certification status is irrelevant because Claimant would not be able to work as a campus police officer regardless of whether or not he was certified, meaning that his certification status did not cause any lack of earning power.

However, even if we were to address Employer's contention that Claimant's wage loss was caused by his convictions and loss of certification, the WCJ also found that the statutory provisions which Captain Leddy presented found at 53 Pa. C.S. §§ 2161–2171 did not provide for an automatic revocation of Claimant's certification or need for re-certification based on Claimant's criminal convictions. 53 Pa. C.S. § 2164(a)[9] actually states nothing more than it is the MPOETC's duty to revoke a police officer's certification when he is convicted of a criminal offense. It says nothing regarding the procedure on how to go about doing that. Rather, 37 Pa.Code § 203.14[10] provides that the MPOETC has the right to revoke a police officer's certification after notice and an opportunity to be heard, which Employer failed to show had occurred. Although Employer also argues that the WCJ erred by requiring proof that Claimant's certification by the MPOETC was a precondition to suspending Claimant's benefits under the Act, it was still Employer's burden to prove that Claimant was no longer employed. Moreover, Claimant's statement at his criminal sentencing hearing that he would not be able to return to work as a campus police officer because of his convictions is insufficient to establish that fact. It merely presumed the ultimate outcome of the de-certification process when, at the time he made that statement, he still remained eligible to be a police officer until the MPOETC revoked his certification. Employer did not submit evidence that Claimant's certificate had actually been revoked by the MPOETC or submit a letter terminating Claimant from employment.

Accordingly, because there was insufficient evidence to support a finding that Claimant's loss of earnings was unrelated to his work injury and was related to his convictions, the decision of the Board that Claimant's loss of earnings was related to his work injury is affirmed.

### ORDER

AND NOW, this *5th* day of *April,* 2011, the order of the Workers' Compensation Appeal Board dated September 21, 2010, at A09–1164, is affirmed.

---

9. In fact, 53 Pa.C.S. § 2164(a) provides:

*The powers and duties of the commission [MPOETC] shall be as follows:*

    (1) To establish and administer the minimum courses of study for basic and in-service training for police officers and *to revoke an officer's certification when* an officer fails to comply with the basic and in-service training requirements *or is convicted of a criminal offense* or the commission determines that the officer is physically or mentally unfit to perform the duties of his office. (Emphasis added.)

No other statute in this section addresses revocation of certification.

10. 37 Pa.Code § 203.14(a)(6) provides the following:

(a) The Commission maintains the right to revoke certification after notice and an opportunity to be heard under Subchapter G (relating to notice and hearings) for one or more of the following:

    \*    \*    \*

    (6) Conviction for a disqualifying criminal offense.

Subsection (b) provides:

Under subsection (a)(1), (5) and (6), it shall be the responsibility of the head of the applicant's employing police department to provide written notice to the Commission of the following:

    \*    \*    \*

    (3) An officer's arrest for a disqualifying offense within 15 days from the date of arrest.

CONCURRING OPINION BY Judge LEAVITT.

I concur in the result and agree that Employer failed to prove that Claimant's certification had been revoked or that Employer had discharged Claimant. That absence of evidence was fatal to Employer's case. I write separately only to note that the WCJ lacked jurisdiction to hold whether or not Employer's evidence satisfied the terms of Chapter 21, Subchapter D of the General Local Government Code, 53 Pa. C.S. §§ 2161–2171 (relating to Municipal Police Education and Training).