IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Colleen Freedman, : 
              Petitioner : 
                   : 
              v. : 
                   : 
Workers' Compensation Appeal : 
Board (Starr Restaurant), :   No. 619 C.D. 2015
             Respondent :   Submitted: October 9, 2015

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE MARY HANNAH LEAVITT, Judge[1]
                HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                   FILED: February 22, 2016

Colleen Freedman (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) March 17, 2015 order affirming, as modified, the Workers' Compensation Judge's (WCJ) decision granting Starr Restaurant's (Employer) Petition to Review Compensation Benefits and Review Medical Treatment and/or Billing (Review Petition). The sole issue before this Court is whether the WCJ erred by failing to give appropriate weight to Claimant's treating psychologist, Sherri Landes, Ph.D.'s (Dr. Landes) testimony. After review, we affirm.

On September 22, 2007, Claimant sustained a right shoulder contusion while employed with Employer. Employer issued a Notice of Temporary Compensation Payable, which was later converted to a Notice of Compensation Payable (NCP) under which Claimant received indemnity benefits. In 2009, by the

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

parties' agreement, Claimant's work-related injury description was amended to include right brachial plexopathy, traumatic costoclavicular syndrome with complicating right upper extremity venus thrombosis, and pulmonary hypertension from pulmonary emboli. In 2011, the parties again agreed to amend Claimant's injury description to include major depression and moderate post-traumatic stress disorder.

On October 5, 2012, Employer filed the Review Petition, declaring therein that Claimant had fully recovered from "ALL PSYCHIATRIC AND PSYCHOLOGICAL INJURIES, INCLUDING MAJOR DEPRESSION AND MODERATE POST-TRAUMATIC STRESS DISORDER, BASED UPON THE REPORT OF WOLFRAM RIEGER, M.D. DATED 9/6/12." Reproduced Record (R.R.) at 3a. Claimant filed an answer denying Employer's claim and seeking attorney's fees for an unreasonable contest. WCJ hearings were held on November 19, 2012, and January 22, June 25 and September 23, 2013. By May 1, 2014 decision, the WCJ granted Employer's Review Petition.[2] Claimant appealed to the Board. On March 17, 2015, the Board affirmed the WCJ's decision and order, as modified.[3] Claimant appealed to this Court.[4]

Claimant argues that the WCJ erroneously found that Claimant had recovered from all of her work-related psychiatric and psychological injuries because he failed to give appropriate weight to Dr. Landes' testimony. We disagree.

---

[2] The WCJ's conclusions of law clearly reflect that the Review Petition "is granted"; however, the WCJ's order states that the Review Petition "is DENIED and DISMISSED." WCJ Dec. at 7-8.

[3] Based upon the WCJ's findings and conclusions, the Board deemed the WCJ's order denying and dismissing Employer's Review Petition "a typographical error" and "modif[ied] the [o]rder to read that '[Employer]'s Review Petition is GRANTED.'" Board Op. at 6.

[4] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

Section 413(a) of the WC Act (Act)[5] provides, in pertinent part: "A [WCJ] may, at any time, review and modify . . . a[n NCP] . . . upon petition filed by either party with the [D]epartment [of Labor and Industry (Department)], . . . if it be proved that such [NCP] or agreement was in any material respect incorrect." 77 P.S. § 771. "The burden of proof is on the party seeking to modify the NCP . . . ." *Anderson v. Workers' Comp. Appeal Bd. (Pa. Hosp.)*, 830 A.2d 636, 641 (Pa. Cmwlth. 2003). Thus, in the instant case, Employer had the burden of proving by substantial evidence that Claimant's previously-accepted major depression and moderate post-traumatic stress disorder should be removed from the NCP's injury description.

> 'Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder. Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party.' It does not matter if there is evidence in the record supporting findings contrary to those made by the WCJ; the pertinent inquiry is whether the evidence supports the WCJ's findings.

*3D Trucking Co., Inc., v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa. Cmwlth. 2007) (quoting *Waldameer Park, Inc. v. Worker' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003) (citations omitted)).

In support of its Review Petition, Employer admitted Wolfram Rieger, M.D.'s (Dr. Rieger) deposition into evidence at the June 25, 2013 hearing. Dr. Rieger testified that he is board-certified in the areas of psychiatry and neurology, he

---

[5] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §771.

has operated a private counseling practice and has been a professor of clinical psychiatry at the University of Pennsylvania since 1970. Dr. Rieger recalled reviewing Claimant's medical records and conducting independent medical evaluations (IME) of Claimant at Employer's request on November 17, 2011 and August 28, 2012.

According to Dr. Rieger's November 22, 2011 report of Claimant's November 17, 2011 evaluation, Claimant described falling at work and thereafter developing a deep vein thrombosis and pulmonary emboli for which she underwent numerous medical procedures, including surgery. Claimant had physical complaints of constant neck and right arm pain, and muscle spasms in her shoulder, neck and right upper arm for which she received physical therapy three times per week. Dr. Rieger also noted that Claimant experienced frequent headaches and bouts of nausea. He recalled Claimant describing that, before her work accident, she was very active, particularly with her youngest son who has Asperger's syndrome.

Dr. Rieger recounted Claimant's description of feeling depressed because of the marked reduction of her physical activity after her work injury, and a significant fear of instant death due to her pulmonary embolism. He further reported that Claimant had guilt over having to rely upon her children and her partner, when she used to be very independent. Dr. Rieger's report reflected that Claimant reported a diminished appetite, crying, distorted flashbacks of the accident and impatience with her youngest son. In addition, the report contained information that Claimant experienced nightmares, took medication to help her sleep and attended psychotherapy with Dr. Landes.

In Dr. Rieger's November 22, 2011 report, he opined within a reasonable degree of medical certainty that Claimant "had major depression as well as a moderate post[-]traumatic stress disorder" which he related directly to Claimant's September 22, 2007 work accident. R.R. at 144a. He further diagnosed

4

that Claimant "ha[d] serious symptoms and serious impairment of her occupational functioning." R.R. at 142a. Although Dr. Rieger had not yet seen Dr. Landes' reports regarding Claimant's treatments, he concluded, based upon Claimant's representations, that the psychotherapy Dr. Landes provided for Claimant "was related to the work injury and reasonable and necessary." R.R. at 144a. He estimated, based upon Claimant's progress, that she would "reach maximum psychotherapy benefits in mid-2012." R.R. at 144a.

Dr. Rieger recalled from his August 28, 2012 evaluation that Claimant reported she still had right shoulder, neck and upper arm pain and tingling for which she continued to undergo physical therapy. He further related that Claimant missed four months of therapy after she developed a large hematoma in her abdominal wall, purportedly due to the blood thinners she took for her emboli. Dr. Rieger testified that both Claimant's hematoma and her deep vein thrombosis had resolved, but her fatigue and nausea, which she attributed to worry, continued. Dr. Rieger described Claimant as more positive, although still not as active as she would like to be.

Dr. Rieger reviewed Dr. Landes' records in preparation for Claimant's August 28, 2012 evaluation. Dr. Rieger explained that Dr. Landes validates and reassures Claimant that her anxiety is normal under her circumstances, and taught Claimant to practice biofeedback (*i.e.*, relaxation training) at home to help her cope. He recalled Claimant insisting that she must continue to see Dr. Landes because she gets overwhelmed and Dr. Landes makes her feel better about herself. Dr. Rieger expressed concern that Dr. Landes' "therapy, for quite some time, has been conducted over the phone." R.R. at 92a. Dr. Rieger related that he would only hold telephone therapy sessions as an emergency measure, since he would want the visual impact of seeing a patient's reaction to his treatment.

Dr. Rieger summarized:

5

I find her cognitively intact. . . . I find her to be of an even mood, actually in good spirits and no longer hav[ing] any depressive symptoms. S[he is s]till somewhat frustrated over what she perceives as her limitations. She no longer has any post[-]traumatic stress disorder symptoms. She worries about having other medical complications. . . . [S]he's not at all suicidal or homicidal and I could not discern an[y] pathologic personality complaints.

R.R. at 95a-96a. He concluded that "she is now recovered fully and completely from the major depression and the moderate post[-]traumatic stress disorder" that he diagnosed on November 17, 2011. R.R. at 96a. Dr. Rieger pronounced with a reasonable degree of medical certainty that, from a psychiatric standpoint, Claimant could return without restriction to work at any job for which she was qualified. *See* R.R. at 101a.

Based upon his review of Dr. Landes' treatment notes, Dr. Rieger stated: "[I]t doesn't look like they made much progress. Dr. Landes . . . documented that . . . [Claimant's] main psychologic complaints were insecurity about her financial situation. . . . But [what]'s missing in my opinion, . . . is a clear treatment plan with stated goals." R.R. at 98a-99a. Dr. Rieger further opined: "[I]n my opinion, . . . this course of psychotherapy . . . has run its course, [and] no further benefits can now be expected. Essentially, their relationship is now one of a friendship[.]" R.R. at 100a. Dr. Rieger added: "[U]nderstandably she likes Dr. Landes and understandably she appreciates having occasion to ventilate about whatever is going on in her life." R.R. at 109a. Dr. Rieger does not believe that discontinuing psychotherapy would cause Claimant to re-experience depression and post-traumatic stress disorder since Claimant's depression was situational, rather than a biologic depression that occurs without any specific reason and, therefore, continuing treatments with Dr. Landes will not guarantee against future triggering emboli. R.R. at 111a-112a.

In opposition to Employer's Review Petition, Claimant offered Dr. Landes' deposition into evidence at the June 25, 2013 hearing. Dr. Landes is a

6

licensed psychologist who has offered private therapy since 1982. Dr. Landes recalled Claimant's first session on December 20, 2010, during which Claimant related the history of her work injury, treatment and medical complications. Dr. Landes stated that Claimant was using oxygen at that time, and had just been told that her emboli would progressively worsen and may eventually result in a lung transplant. Dr. Landes reported that Claimant sought therapy not only due to nightmares and flashbacks from the trauma of the fall, but due to the frustration over her diminished physical abilities and her prognosis. Dr. Landes described that Claimant experienced nausea, dizziness, fatigue and a fear of dying and leaving her youngest son without the support he needs. After a few sessions, Dr. Landes diagnosed Claimant with a major depressive disorder caused by her work injury, and determined that Claimant was not capable of working at that time. She prescribed weekly psychotherapy to address Claimant's depression, anxiety, frustration and loss of self-esteem, and biofeedback to reduce stress.

Dr. Landes articulated that she has treated Claimant on a weekly basis since December 2010, during which time, although Claimant's depression varied, her emotional condition slowly improved, and her anxiety became manageable. Notwithstanding, Dr. Landes concluded that Claimant's diagnosis has not changed, and she could not return to any gainful employment. *See* R.R. at 42a. Dr. Landes stated that Claimant's "prognosis is very much linked to her medical condition" and, as a result, whether Claimant will get to the point where she no longer needs psychotherapy depends upon whether her medical conditions are resolved. R.R. at 40a.

The law is well established that "[t]he WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). "The WCJ, therefore, is free to accept or reject, in whole or in part, the

testimony of any witness, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000). Thus, neither the Board nor the Court may review the evidence or reweigh the WCJ's credibility determinations. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246 (Pa. 2001).

> Moreover,
>
> Section 422(a) of the Act[6] requires a WCJ to issue a decision that permits an appellate court to exercise adequate appellate review. In order to satisfy this standard, a WCJ does not need to discuss every detail of the evidence in the record. Rather, Section 422(a) of the Act requires WCJs to issue reasoned decisions so that this Court does not have to 'imagine' the reasons why a WCJ finds that the conflicting testimony of one witness was more credible than the testimony of another witness.
>
> Although our Supreme Court has held that a WCJ need not explain credibility determinations relating to a witness who testifies before the WCJ, Section 422(a) of the Act requires some explanation of credibility determinations by a WCJ with regard to conflicting deposition testimony in order to enable this Court to review a WCJ's decision. Under Section 422(a) of the Act, a WCJ must articulate the objective rationale underlying his credibility determinations where the testimony of such witnesses is conflicting. **A WCJ may satisfy the reasoned decision requirement if he summarizes the witnesses' testimony 'and adequately explains his credibility determinations**.' *Clear Channel Broad. v. Workers' Comp. Appeal Bd. (Perry),* 938 A.2d 1150, 1157 (Pa.Cmwlth.2007). Thus, while summaries of testimony alone would be insufficient to satisfy the reasoned decision requirement, **where a WCJ summarizes testimony and also objectively explains his credibility determinations, the decision will satisfy the requirement**. Further, other evidence in the record may provide the objective support necessary under Section 422(a) of the Act for adequate credibility determinations.

---

[6] 77 P.S. § 834.

*Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods),* 37 A.3d 72, 76 (Pa. Cmwlth. 2012) (citations omitted; emphasis added).

Here, the WCJ's findings of fact accurately summarized Dr. Rieger's and Dr. Landes' testimony. Thereafter, the WCJ deemed Dr. Rieger's testimony "competent, credible, persuasive and [] supported by the medical evidence[,] including diagnostic studies reviewed by all applicable physicians." WCJ Dec. at 5. With respect to Dr. Landes' testimony, the WCJ stated:

> Dr. Landes' testimony is deemed credible only where it does not contradict the testimony of defense medical expert Dr. Rieger. Dr. Landes does not have a medical degree. She is not qualified to dispense medications. Defense expert Dr. Rieger is an M.D. and can prescribe medications. He is a practicing board[-]certified psychiatrist with extensive teaching and clinical credentials and therefore Dr. Rieger's testimony carries more weight than the testimony of Dr. Landes.

WCJ Dec. at 6.[7] Where, as here, a WCJ is faced with competing medical deposition testimony, whether one expert is more or less qualified than another is a sufficient objective reason upon which to base a credibility determination. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043 (Pa. 2003).

Because this Court may not reweigh the evidence or the WCJ's credibility determinations, and must view the evidence in a light most favorable to Employer, we hold that the WCJ did not err in granting Employer's Review Petition. Accordingly, the Board properly affirmed the WCJ's decision as modified.

_____
ANNE E. COVEY, Judge

---

[7] The WCJ found "[t]he testimony of Claimant is deemed not credible or persuasive." WCJ Dec. at 7.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Colleen Freedman,                          :
                         Petitioner     :
                                       :
                  v.                      :
                                       :
Workers' Compensation Appeal        :
Board (Starr Restaurant),                  :     No. 619 C.D. 2015
                        Respondent    :

## O R D E R

AND NOW, this 22nd day of February, 2016, the Workers' Compensation Appeal Board's March 17, 2015 order is affirmed.

                            _____

                            ANNE E. COVEY, Judge