# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Linda Gladziszewski,          :
           Petitioner      :
                               :
         v.              :
                               :
Workers' Compensation Appeal Board   :
(PNC Financial Services Group, Inc.),   :    No. 866 C.D. 2015
              Respondent    :    Submitted: October 16, 2015


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE MARY HANNAH LEAVITT, Judge[1]
               HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                      FILED: March 7, 2016


Linda Gladziszewski (Claimant) petitions this Court for review of the Workers' Compensation Appeal Board's (Board) April 28, 2015 order affirming the Workers' Compensation Judge's (WCJ) decision granting PNC Financial Services Group, Inc.'s (Employer) Petition for Modification/Review of Compensation Benefits (Modification/Review Petition). The sole issue before the Court is whether as of April 18, 2013, Employer was entitled to a decreased reimbursement rate on future workers' compensation (WC) payments on account of Claimant's receipt of a third-party settlement in excess of the accrued WC lien. After review, we affirm.

Claimant was employed with Employer when she sustained a left leg injury on June 8, 2009. The injury was accepted by a Notice of Temporary Compensation Payable and described as a fractured left medial femoral condyle. Following the injury, Claimant returned to work at various times, entitling her to

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

periods of indemnity benefits. On September 26, 2011, Claimant's benefits were suspended pursuant to an unchallenged Notification of Suspension.

In addition to her WC benefits claim, Claimant pursued a third-party lawsuit against Schindler Elevators as a result of her work injury. A settlement occurred in the third-party lawsuit, and a subrogation agreement was reached between Claimant and Employer (Agreement). Thereafter, the Claimant and Employer disputed whether the Agreement applied to the accrued lien only or to future benefits as well.

On June 21, 2013, Employer filed a Modification/Review Petition alleging that as of April 18, 2013, it was entitled to a decreased reimbursement rate on future compensation payments on account of Claimant's receipt of a third-party settlement in excess of the accrued WC lien. Claimant filed an Answer denying Employer was entitled to relief from payment of future medical expenses. The WCJ held hearings on August 20, 2013 and January 30, 2014.[2] On June 9, 2014, the WCJ granted Employer's Modification/Review Petition. Claimant appealed to the Board and on April 28, 2015, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[3]

Claimant argues that Claimant and Employer stipulated that Employer would accept Claimant's payment "for a full compromise and release of the entire lien[,]" and "entire" has only one reasonable meaning, i.e., both past and future, because the terms entire and accrued have different meanings. Stip. of Fact 14, Reproduced Record (R.R.) at 12A. Thus, Claimant contends that Employer is not entitled to a decreased reimbursement rate on her future WC payments.

---

[2] No testimony was taken at either hearing.

[3] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

2

Initially, the law is well established that "[t]he WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). "The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness[.]" *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000). Thus, "[t]he appellate role in [WC] cases is not to reweigh the evidence or review the credibility of witnesses; rather, the Board or the [C]ourt must simply determine whether, upon consideration of the evidence as a whole, the WCJ's findings have the requisite measure of support in the record." *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246, 1251 (Pa. 2001).

Further,

'[s]ubstantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder. Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party.' It does not matter if there is evidence in the record supporting findings contrary to those made by the WCJ; the pertinent inquiry is whether the evidence supports the WCJ's findings.

*3D Trucking Co., Inc., v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa. Cmwlth. 2007) (quoting *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003) (citations omitted)).

Here, the parties submitted a Stipulation of Facts to the WCJ which, in pertinent part, contained the following agreed upon facts: (1) A settlement occurred in the third-party lawsuit, and an Agreement was reached between Claimant and

3

Employer for "a full compromise and release of the entire [WC] lien[]" for $45,000; (2) "[]Employer's total [WC] lien, as of the date of the settlement conference, was $141,378.99. The net lien that []Employer was entitled to recover from the third[-]party settlement was $103,814.79. As such, []Employer ultimately waived $58,814.79 of [its] lien[;]" (3) "A full and final resolution by way of a Compromise and Release Agreement was not agreed upon by the parties[;]" (4) "At no time during, before, or after negotiation of the waiver of the net accrued lien was the question of future reduced reimbursement rates discussed[;]" (5) The parties disputed whether the $45,000 settlement of the WC lien applied to the accrued lien only or to future benefits as well; (6) Due to the ongoing dispute, "[o]n June 21, 2013, []Employer filed [its Modification/Review Petition] asserting its entitlement to a decreased reimbursement rate on future compensation payments due to Claimant's receipt of a third[-]party settlement in excess of the accrued [WC] lien[;]" and, (7) "On July 15, 2013, Claimant filed an Answer to the Modification/Review Petition denying the requested relief . . . asserting . . . that the [A]greement reached between [the parties] was that the payment of the $45,000 was in full satisfaction of all [WC] lien issue[s]." Stip. of Fact 14-17, 23- 24, R.R. at 12A-14A.

Claimant offered her attorney, Jon R. Perry, Esquire's (Perry) affidavit, wherein, Perry stated that an Agreement was reached between the parties, whereby, "[Claimant] would reimburse [Employer] $45,000 from [her] $463,000 [third-party] settlement 'for a full compromise and release of the entire lien.'" R.R. at 27A. Perry also stated that he "later learned [he and Employer] had different understandings of the [A]greement . . . with regard to future [WC] benefits to which [Claimant] might be entitled." *Id.* He further attested that when considering Claimant's significant pain and suffering damages, her significant residual disability, and her husband's loss of consortium claim, "it [was] readily apparent that no amount of Claimant's $463,000 [third-party] settlement represented damages for future medical expenses."

4

R.R. at 28A.  In addition, Perry stated that "[Claimant] did not, and would not have, agreed to a compromise and release that included a reduction of future medical benefits." *Id.*  Perry further asserted that considering his "general naivety in the area of [WC] law, of which [Employer] was aware, [he] believed that a settlement 'for a full compromise and release of the entire lien' included all future benefits, if any, and if [Employer] intended that the [Agreement] left open [its] claim for a credit against future benefits, [it was] obligated to inform [him], which [it] did not." *Id.*

Employer offered the affidavit of its attorney, Scott Newman, Esquire (Newman), wherein, Newman stated:

> At no time . . . did the parties discuss waiver of []Employer's reimbursement rate on future compensation[, and he] first discovered there was a dispute as to [Employer's] entitlement to reduced future reimbursements when a draft of the [Agreement] was sent to Claimant's counsel containing the standard language entitling [his] client to a future reimbursement rate of 26.57% until the full subrogation interest of $321,621.01 is exhausted.

R.R. at 25A.  Newman further asserted that "[a]t no point during negotiation[s] was it intended, or even contemplated by []Employer, that [its] entitlement to a reduced future reimbursement was being waived or was part of the negotiations." *Id.*

Claimant contends that the interpretation of the use of the words "entire lien" in the Agreement is the dispositive issue in this matter.  We disagree.  Clearly, the language used in the Agreement cannot be reviewed in a vacuum as it relates to WC and thus, the WC Act (Act)[4] must be reviewed as well.

> Section 319 of the [Act], 77 P.S. § 671, provides that where a compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employee against such third party to the extent of compensation payable. Thus, an

---

[4] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

5

employer who has paid [WC] benefits to a claimant injured by a third party has an absolute right to immediate payment of its subrogation lien from the claimant's recovery against the third party, after payment of attorney fees and litigation expenses; to the extent the recovery exceeds the past due lien and litigation costs, the balance is paid to the claimant, **and the employer retains a contingent lien against this payment for the reimbursement of future compensation benefits which may become payable**. It is well-settled that payments of medical expenses are compensation payments subject to subrogation rights against a claimant's recovery from a third party, and subject to a credit toward future compensation, where that recovery exceeds compensation paid at the time of the recovery.

*Reeder v. Workers' Comp. Appeal Bd. (Mercer Lime & Stone Co.)*, 871 A.2d 337, 338-39 n.1 (Pa. Cmwlth. 2005) (citation omitted; emphasis added). As our Supreme Court has explained:

> Subrogation in our [WC] system is a significant and firmly established right. Specifically, while subrogation is an important equitable concept that applies whenever a debt or obligation is paid by one party though another is primarily liable, in the realm of [WC], it has assumed even greater stature. Our Court has stated that **the statutory right to subrogation is** 'absolute and can be abrogated only by choice.' This is so because the statute granting subrogation 'clearly and unambiguously' provides that the employer 'shall be subrogated' to the employee's right of recovery. Thus, the importance and strength of subrogation in our system of [WC] cannot be understated.

*Brubacher Excavating, Inc. v. Workers' Comp. Appeal Bd. (Bridges),* 835 A.2d 1273, 1275-76 (Pa. 2003) (citations omitted; emphasis added).

In *Reeder,* a case also involving the issue of whether a third-party agreement waived the employer's future indemnity rights, the claimant asserted that the interpretation of the words "our compromise of our lien" was dispositive of the entire matter. The *Reeder* Court expounded:

[The c]laimant insist[ed] that th[e] letter 'clearly speaks' to the release of any and all subrogation interest previously held by [the insurance carrier] on behalf of [the e]mployer and constitutes a bar to any further recovery. However, the WCJ accepted the contrary testimony of [the employer's witness] as credible and persuasive with respect to the parties' understanding. It is axiomatic that the WCJ, as fact finder, has exclusive province over questions of credibility and evidentiary weight and that, unless such determinations are made arbitrarily and capriciously, they are binding on appeal.

*Id.* at 340. Here, the WCJ determined:

[E]mployer's acceptance of the $45,000[] applies only to the indemnity and medical expenses that already had been paid at the time of the settlement negotiations[,] i.e.[,] the accrued lien. In so concluding, [the WCJ found] that both the affidavits of [Newman] and [Perry] reflect that the resolution only encompassed the amount of the accrued lien and that there was never any discussion of any future rights and obligations of the parties. Furthermore, the [WCJ] notes that the email between the parties further reflects the agreement between the parties that it was [C]laimant's counsel['s] understanding that the $45,000[] was in full satisfaction of its 'accrued lien.'[5] [The WCJ found] that this email is a direct contradiction of [C]laimant's current

---

[5] The email was sent from Perry's associate Paul Hilko to Newman, and reads in its entirety:

I have called on at least two occasions, asking you to call me to discuss this matter, but you have yet to call back. I thought an email may be a better way to handle this matter. You have sent to us a Third Party Settlement for our client's signature. **[Perry] tells me that the agreement reached with you and our client was that [E]mployer would accept $45,000 in full satisfaction of its accrued lien** and that is what the Agreement first provides in the section entitled 'Further Matters Agreed Upon[.]' However, it goes on to state that [E]mployer is entitled to future reimbursement until the full subrogation amount is exhausted. Please explain why [E]mployer is entitled to anything more than the $45,000 our client has agreed to reimburse from her settlement.

R.R. at 19A (emphasis added).

7

position that the resolution encompassed any future entitlement [E]mployer retained pursuant to the [Act.]

WCJ Dec. at 4. Because this Court may not reweigh the evidence or the WCJ's credibility determinations, and must view the substantial, credible evidence in a light most favorable to Employer, we hold that the WCJ did not err in granting Employer's Modification/Review Petition. Accordingly, the Board properly affirmed the WCJ's decision.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Linda Gladziszewski, : 
                 Petitioner : 
                    : 
            v. : 
                    : 
Workers' Compensation Appeal Board : 
(PNC Financial Services Group, Inc.), :     No. 866 C.D. 2015
                Respondent : 

## O R D E R

AND NOW, this 7th day of March, 2016, the Workers' Compensation Appeal Board's April 28, 2015 order is affirmed.

 

_____
ANNE E. COVEY, Judge