Thomas Frankhouser, : 
                           Petitioner : 
                                      : 
              v.                      : 
                                      : 
Workers' Compensation Appeal          : 
Board (Safelite Group, Inc.),         : No. 450 C.D. 2017
                           Respondent : Submitted: August 25, 2017


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: December 7, 2017


Thomas Frankhouser (Claimant) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) March 17, 2017 order affirming the Workers' Compensation Judge's (WCJ) decision granting Safelite Group, Inc.'s (Employer) Petition to Suspend Compensation Benefits (Suspension Petition) and Claimant's Petition to Review Compensation Benefits (Review Petition), and denying Claimant's Penalty Petition. The sole issue before this Court is whether the WCJ erred by granting Employer's Suspension Petition. After review, we affirm.

Claimant worked for Employer as an auto glass technician for approximately 15 years. On March 29, 2013, while replacing a tractor trailer windshield, Claimant slipped off of a tire he was standing on and injured his left knee. Employer accepted liability for Claimant's knee injury by way of a Notice of Compensation Payable (NCP). Pursuant to the NCP, Claimant began to receive WC

benefits at the rate of $483.58 based upon a pre-injury average weekly wage of $725.36. Claimant came under the care of Thomas J. Renz, D.O. (Dr. Renz). Dr. Renz performed surgery to repair the ruptured synostosis associated with Claimant's patella on July 25, 2013. Following his knee surgery, Claimant used a hinged brace which altered his gait. As a result, Claimant developed significant low back pain. Diagnostic studies reflected a large disc fragment at L3-4 for which Claimant was referred to Marcelino P. Oliveri, D.O. (Dr. Oliveri), an orthopedic surgeon specializing in spinal surgery. Dr. Oliveri surgically removed the fragment on November 12, 2013. Claimant last treated with Dr. Renz and Dr. Oliveri on June 10 and 16, 2014, respectively. Both physicians released Claimant to return to work with restrictions.

On September 16, 2014, Employer issued Claimant a Notice of Ability to Return to Work. Thereafter, Employer offered Claimant modified-duty work performing utility repair work consistent with his medical restrictions beginning October 27, 2014. Claimant reported to Employer's facility on October 27, 2014 as requested, but he did not attempt to perform any work. Rather, he spoke to his attorney on the phone and left after one hour. On October 28, 2014, Employer issued a Notification of Suspension or Modification (Suspension Notification) based on Claimant's return to work. Claimant filed a Challenge Petition and a Penalty Petition relative to the Suspension Notification. On October 29, 2014, Employer filed the Suspension Petition seeking relief as of October 27, 2014 based on the modified job offer. On December 29, 2014, Claimant filed his Review Petition, wherein, he sought to expand the NCP to include a specific left knee diagnosis and low back injury.

The Suspension, Penalty and Review Petitions were consolidated, and WCJ hearings were held on November 21, 2014, and February 3 and March 12, 2015. On July 1, 2015, the WCJ granted Employer's Suspension Petition, effective October 27, 2014; granted Claimant's Review Petition; denied and dismissed Claimant's

2

Penalty Petition; and dismissed as moot Claimant's Challenge Petition. Claimant appealed to the Board. On May 3, 2016, the Board remanded the matter to the WCJ to make findings regarding the amount and reasonableness of Claimant's litigation costs, and to award those costs. The Board affirmed the WCJ's decision in all other respects. On August 4, 2016, the WCJ determined that Claimant incurred $761.16 in litigation costs and directed Employer to reimburse Claimant that amount. Claimant did not appeal from the WCJ's award of litigation costs, but only from the WCJ's granting of Employer's Supension Petition to the Board. On March 17, 2017, the Board in reaffirming its original Opinion and Order, stated: "Thus, the only issues remaining are ones which we have previously decided. Consequently, to the extent Claimant only appeals those issues that were previously decided in our May 3, 2016 Opinion, we affirm that Opinion and make it final." Board Op. at 3. Claimant appealed to this Court.[1]

Claimant argues that by granting the Suspension Petition the WCJ misapplied undisputed record evidence that the job Employer offered him did not comply with his medical restrictions. Specifically, Claimant argues that, since the WCJ's finding that Employer's October 2014 job offer complied with Dr. Oliveri's and Dr. Renz's restrictions was not supported by the evidence, Employer failed to meet its burden in proving its Suspension Petition. We disagree.

> Generally, a suspension of benefits is appropriate where the employer establishes that the claimant has recovered all of his or her earning power; otherwise, benefits are only modified. The employer has the burden of proving that the claimant's work-related injury has improved sufficiently for the claimant to return to work and that a job the claimant is

---

[1] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

capable of performing is available to the claimant; once the employer meets this burden, the burden shifts to the claimant to demonstrate that he or she responded to the job offer in good faith.

*Se. Pa. Transp. Auth. (SEPTA) v. Workers' Comp. Appeal Bd. (Cunningham),* 72 A.3d 814, 817 (Pa. Cmwlth. 2013) (citation omitted).

Claimant asserts that it is "undisputed" that the job Employer offered him did not comply with his doctors' restrictions. Claimant Br. at 12. However, the testimony reveals otherwise. Employer's manager Eric Snyder (Snyder) testified:

> When [Claimant] came [in on October 27, 2014], I told him that [my boss Kirk Reed] had called me and that, you know, there was a position for him that we had modified to deal with his restrictions, and that he was not repair-certified yet, and that for the first three or four days maybe a week we would be training him on repair.

Reproduced Record (R.R.) at 135a. With respect to Claimant's restrictions, Snyder explained:

> Q. [Employer's Counsel] Okay. And we've had a discussion about [Claimant's] restrictions, lifting up to 20 pounds, no prolonged lifting, bending or twisting and no sitting more than 20 minutes.
>
> A. [Snyder] Correct.
>
> Q. **Were all the tasks that you have envisioned for him within those restrictions that I just described**?
>
> A. **Yes, they were**.
>
> Q. Now we've mentioned that this was a modified-duty utility tech position, would a normal utility technician have to do things that would exceed the restrictions imposed by --
>
> A. Yes, they would.
>
> Q. --- [Claimant's] doctors?
>
> A. Yes, they would.

4

Q. Okay. In what way?

A. Some vehicles maybe like a Dodge Ram pickup truck that's, you know, all jacked up four or five feet high, you might have to get on a ladder to do a repair. You know, there are bigger vehicles that would probably fall within, you know, not being within his restrictions, so we would modify that. If there was something that he physically couldn't do, we wouldn't have him do it.

. . . .

Q. So if a job were to come in on a big Dodge pickup truck, like you just described --

A. Right.

Q. --- that would require him to climb up on a ladder, how would you address that situation with [Claimant]?

A. Somebody else would do that job. If it were something that wasn't within the parameters of his disability, we wouldn't have him do it.

R.R. at 136a-138a (emphasis added). Further, Dr. Renz testified:

Q. [Employer's Counsel] Okay. Following your last examination and Dr. Oliveri's last examination, [Employer] offered [Claimant] a position as a utility tech. I want to show you a letter dated October 15th, 2014. That was the letter offering him the position. I'll give you an opportunity to review that.

A. [Dr. Renz] Okay.

Q. You had an opportunity to review this offer to him?

A. Yes.

Q. Okay. Now, according to the letter, **the utility tech position would adhere to restrictions of lifting up to 20 pounds, no prolonged lifting, bending, twisting or sitting more than 20 minutes. Based upon what was contained on the face of this letter, does it sound like, just from what's on the face of the letter, that that would be consistent with the limitations that you imposed?**

A. **Yes.**

5

Q. I want to provide you with some additional information. I have to do it in the form of a hypothetical because [E]mployer hasn't testified yet, but they will at the next hearing.

So I want you to assume for purposes of this question if [E]mployer will testify as follows; that the job that they envisioned for [Claimant] as a utility tech would involve repairing cracked windows. Most of us have encountered the unpleasant experience of having a cracked windshield at some point or another. He would not have been involved in replacing windshields, but if cracks were small enough that they could be repaired, he would have repaired windshields by putting in whatever that material is into the windshield that would allow it to be repaired.

He would also have been involved in repairing the glass from side windows, which weigh between five and ten pounds, the glass itself. The process of repairing the side glass would involve removing door panels. The door panels also weigh between five and ten pounds. He would be able to sit and stand as needed for comfort when performing these tasks. There would not be any performance quotas. He could work at his own pace.

**Assuming that the employer testifies consistent with what I have just described, do you believe the job that they envisioned for him would comply with the restrictions that you had imposed**?

. . . .

[A.] I think most of what you've described he could do. The problem would be filling cracks that are more on the center of the windshield. So within the arm's length of the windshield, I don't think there would be a problem with that, but to have to reach over more than two or three feet into the windshield, a higher car I think would be a problem for him.

Q. Okay. If the windshields were removed before the crack was repaired such that he didn't have to lean over, would that be okay?

. . . .

6

[A.] **Yes, that would be fine.**

R.R. at 28a-31a (emphasis added). Because the WCJ found both Snyder and Dr. Renz credible,[2] *see* R.R. at 185a, there was record evidence supporting the WCJ's conclusion that the offered job was within Claimant's restrictions. Accordingly, the WCJ properly granted Employer's Suspension Petition.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[2] "The WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011).

Thomas Frankhouser,            :
          Petitioner       :
                             :
       v.                      :
                             :
Workers' Compensation Appeal    :
Board (Safelite Group, Inc.),      :    No. 450 C.D. 2017
          Respondent    :

## O R D E R

AND NOW, this 7th day of December, 2017, the Workers' Compensation Appeal Board's March 17, 2017 order is affirmed.

_____
ANNE E. COVEY, Judge