**Regis STEPP, Petitioner**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (FAIRPOINT COMMUNICATIONS, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 6, 2014.

Decided Sept. 10, 2014.

Mark C. Stopperich, Washington, for petitioner.

Paul S. Mazeski, Pittsburgh, for respondent.

BEFORE: RENÉE COHN JUBELIRER, Judge, and MARY HANNAH LEAVITT, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

Regis Stepp (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying Claimant's review offset petition. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that FairPoint Communications [1] may take an offset against Claimant's workers' compensation benefits under Section 204(a) of the Workers' Compensation Act [2] (Act) for pension benefits funded by its wholly-owned subsidiary. We affirm.

Claimant began working for Marianna Scenery Hill Telephone Company (Marianna) on January 4, 1973. On September 1, 2000, FairPoint acquired Marianna. Claimant continued to be an employee of Marianna, but the human resources department for all employees of all FairPoint subsidiaries was managed by FairPoint.

Although not specifically explained, it appears that all employees in the "FairPoint family of subsidiaries" were covered by the same workers' compensation plan or policy. Reproduced Record at 98a (R.R. ____).

On June 13, 2008, Claimant sustained a back injury in the course of his employment as an outside plant technician. The injury rendered Claimant unable to perform his job duties, which included climbing, installing and repairing cable while wearing a tool belt and carrying equipment that weighed approximately 40 pounds. Claimant was off work from June 16, 2008, through November 11, 2008. Claimant returned to light-duty work on November 12, 2008, but went off work a day and a half later because of pain from his injury; he did not believe he could perform the light-duty position. Claimant has not worked since November 13, 2008.

Claimant began receiving workers' compensation benefits at a rate of $733.67 per week pursuant to a Notice of Compensation Payable. On June 28, 2010, Claimant notified FairPoint in writing of his intention to retire on July 1, 2010. On July 26, 2010, FairPoint petitioned to suspend Claimant's benefits, alleging that he had been released to return to work and work was available within his restrictions with no loss of earnings. Claimant filed an answer denying the allegations in the suspension petition. Claimant began receiving his pension payments in October of 2010.

---

1. We note that FairPoint's name was misspelled as "Fairpoint" in the petition for review. We have corrected the spelling in this opinion.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 71(a). In relevant part, Section 204(a) provides that "the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c)." 77 P.S. § 71(a). The portion of Section 204(a) providing for an offset for pension payments was added by the Act of June 24, 1996, P.L. 350.

On January 4, 2011, FairPoint filed a notice of workers' compensation benefit offset, stating that an offset of $454.58 per week would be charged against Claimant's workers' compensation disability. This offset was based upon the percentage of Claimant's pension benefit that was employer-funded. Claimant filed a petition to review compensation benefit offset alleging that because Marianna, not FairPoint, had funded the pension plan, FairPoint was not entitled to an offset. The suspension and review offset petitions were consolidated and assigned to the WCJ for a hearing.[3]

FairPoint presented the deposition testimony of its benefits manager, Jacqueline Coan. Coan described FairPoint's acquisition of Marianna as a "merger and fast purchase." R.R. 87a. Specifically, FairPoint acquired the stock of Marianna.[4]

Coan testified that Marianna continued doing business as a wholly-owned subsidiary of FairPoint and that Claimant remained an employee of Marianna. Coan testified that Claimant contacted FairPoint to request a payout of his pension benefits in June 2010. Accordingly, the National Telephone Communications Association (NTCA), a multi-employer pension fund that administered Marianna's pension plan, responded with several alternative payout plans for Claimant. Coan determined that Claimant's contribution to the pension was 4.29% and Marianna's contribution was 95.71%. R.R. 90a. Using this information, Coan determined that FairPoint was entitled to an offset of $423.27 per week against Claimant's compensation benefit. *Id.*[5]

---

3. The suspension petition is not relevant on appeal.

4. Coan described FairPoint's acquisition of Marianna in further detail in a sworn affidavit, which was also offered into evidence. Coan stated:

> Marianna became a wholly owned second-tier subsidiary of FairPoint in 2001 by virtue of the acquisition of all the stock of Marianna by MGD Ventures, Inc., a direct wholly owned subsidiary of FairPoint. Therefore FairPoint also acquired and now maintains all the formal human resources and employee benefits books and records of Marianna, including Marianna's human resources and employee benefits books and records prior to 2001. After the acquisition in 2001, Marianna remained an active Company and all Marianna employees (including [Claimant]) at that time continued as Marianna employees even though they had a new Parent company and were now part of the FairPoint family of subsidiaries. [Claimant] as a result, like all other active employees of Marianna, has remained an employee of Marianna throughout his term of employment.

> R.R. 98a.

5. Coan's affidavit provided further detail on how she calculated Marianna's contribution

to Claimant's pension and the amount of the offset:

> NTCA sent FairPoint a letter dated December 10, 2010 (which letter was copied to [Claimant] in care of his attorney) confirming that [Claimant's] employee contributions toward his pension benefits equaled $3,771.99, which amount had been credited with interest of $10,435.53, for an aggregate of employee contributions plus interest thereon of $14,207.52. This letter also confirmed that as of October 1, 2010, the total value of [Claimant's] benefit was $331,266.46 (which lump sum amount was also given as Option #16 in the NTCA letter dated October [26], 2010 ...).

> Based on NTCA's information above, [Claimant's] employee contributions toward his pension were equal to 4.29% of the total value of his pension, with the remaining 95.71% having been funded by his employer. Applying this amount against the QJSA equivalent amount of $1,919.32/month for [Claimant's] life ..., the portion of the QJSA pension paid by virtue of his employer is $1,836.94 per month (95.71% times $1,919.32). If this monthly benefit is converted to a weekly benefit using an equivalency of one month equaling 4.34 weeks, the weekly amount would be $423.27/week beginning October 1, 2010. The employer is therefore entitled to a credit for his pen-

Claimant testified that approximately one year after FairPoint's acquisition of Marianna, FairPoint's name and logo appeared on all work vehicles, employee uniforms and corporate paperwork. All employees had their paychecks deposited electronically by FairPoint. Claimant offered into evidence copies of his workers' compensation disability checks, which were issued by Sedgwick Claims Management Services on behalf of FairPoint. Claimant testified that he never received anything in writing to confirm that FairPoint had ever contributed to his pension. Claimant recalled that the spousal consent form he signed on August 31, 2010, listed the pension member as Marianna.

The WCJ held that Employer was entitled to a modification of benefits to $123.01 per week as of July 26, 2010, when Employer made work available to Claimant within his restrictions. The WCJ denied Claimant's petition to review offset. The WCJ found that, as a result of FairPoint's acquisition of Marianna, FairPoint and Marianna were the same entity for the purpose of determining whether Claimant's compensation benefits were subject to an offset. The WCJ found that Claimant's weekly compensation disability rate was $310.40 after the offset was applied. Claimant appealed to the Board.

The Board held that FairPoint succeeded to Marianna's right to a pension offset. Accordingly, the Board affirmed the WCJ's conclusion that FairPoint was entitled to a Section 204(a) offset against Claimant's disability benefits. The Board further held that the WCJ erred in the calculation of Claimant's modified weekly benefit rate. The Board found that applying the offset of $423.27 per week to Claimant's modified weekly disability benefit of $123.01 reduced Claimant's weekly compensation benefit to $0. Accordingly, the Board ordered Claimant's benefits to be suspended as of January 26, 2012, the date of the WCJ's decision. Claimant now petitions for this Court's review.

On appeal,[6] Claimant argues that the Board erred in granting FairPoint an offset for Claimant's pension under Section 204(a) of the Act because Marianna funded the pension plan. Claimant argues that FairPoint is not entitled to an offset for a pension plan funded by a different, but still existing, corporation.

We begin with a review of the relevant law on pension offsets. Section 204(a) of the Act provides that "the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the [employee's disability bene-

---

sion of $423.27 per week against [Claimant's] workers compensation benefits. R.R. 100a.

**6.** On review this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence. *Scarpelli v. Workmen's Compensation Appeal Board*, 18 Pa.Cmwlth. 30, 333 A.2d 828, 830 (1975). Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mrs. Smith's Frozen Foods Company v. Workmen's Compensation Appeal Board (Clouser)*, 114 Pa.

Cmwlth. 382, 539 A.2d 11, 14 (1988). The WCJ has exclusive authority to act as fact finder, determine credibility of witnesses, and weigh the evidence. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797, 800 (1995). The WCJ's findings will not be disturbed if they are supported by substantial, competent evidence. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa.Cmwlth.1995). Our review is plenary in examining questions of law. *Donovan v. Workers' Compensation Appeal Board (Academy Medical Realty)*, 739 A.2d 1156, 1161 (Pa.Cmwlth.1999).

fits]." 77 P.S. § 71(a). This Court has explained the legislative intent of Section 204(a) as follows:

> In 1996, the legislature, attempting to combat the increasing costs of workers' compensation in Pennsylvania, amended Section 204(a) of the Act to allow employers an offset against workers' compensation benefits for social security, severance, and pension benefits simultaneously received by an employee.... Amended Section 204(a) serves the legislative intent of reducing the cost of workers' compensation by allowing an employer to avoid paying duplicate benefits for the same loss of earnings. Similarly, Section 204(a) implicitly recognizes that public policy bars an employer from utilizing an employee's own retirement funds to satisfy its workers' compensation obligation.

*Pennsylvania State University v. Workers' Compensation Appeal Board (Hensal)*, 911 A.2d 225, 227–28 (Pa.Cmwlth. 2006) (internal citations omitted).

■ The party seeking to change the *status quo* in a workers' compensation case bears the burden of proof. *Department of Public Welfare/Polk Center v. Workers' Compensation Appeal Board (King)*, 884 A.2d 343, 347 (Pa.Cmwlth.2005). When the change to the *status quo* is a reduction due to pension offset, the employer bears the burden of proving the extent to which it funded the pension plan in question. *Id.*

■ Here, Claimant does not challenge the factual finding of the WCJ that Marianna funded 95.71% of Claimant's pension. Rather, Claimant asserts that the Board erred because FairPoint, not Marianna, is "directly liable" for the payment of his workers' compensation benefits. Thus, Claimant argues that only Marianna, not FairPoint, is entitled to the Section 204(a) offset.

■ When corporations merge, "the surviving corporation succeeds to both the rights and liabilities of the constituent corporation." *LTV Steel Company, Inc. v. Workers' Compensation Appeal Board (Mozena)*, 562 Pa. 205, 754 A.2d 666, 677 (2000). Section 1929 of the Business Corporation Law of 1988 states, in pertinent part, as follows:

> Property rights.—All the property, real, personal and mixed, and franchises of each of the corporations parties to the merger or consolidation, and all debts due on whatever account to any of them, including subscriptions for shares *and other choses in action belonging to any of them, shall be deemed to be vested in and shall belong to the surviving or new corporation,* as the case may be, without further action, and the title to any real estate, or any interest therein, vested in any of the corporations shall not revert or be in any way impaired by reason of the merger or consolidation. *The surviving or new corporation* shall thenceforth be responsible for all the liabilities of each of the corporations so merged or consolidated.

15 Pa.C.S. § 1929(b) (emphasis added). Claimant argues that the Board erred because the so-called "merger" of FairPoint and Marianna was not a true merger of the type described in Section 1929 of the Business Corporation Law. Rather, it was effected by a stock purchase to which Section 1929 has no application.

Coan confirmed that Marianna was a wholly-owned subsidiary of FairPoint. However, the operations of the two corporations are merged, and FairPoint manages all personnel matters. This includes FairPoint's control of the workers' compensation benefits of all employees in all the FairPoint subsidiaries. Stated otherwise, when FairPoint assumed responsibility for Claimant's work injury, it did so on

behalf of Marianna, which remained Claimant's employer.[7]

Coan's credited testimony and affidavit established that Marianna contributed 95.71% of Claimant's pension benefits; Claimant contributed 4.29%. Thus, Marianna was entitled to an offset against Claimant's workers' compensation benefits equal to 95.71% of Claimant's pension benefit. How FairPoint and Marianna do the accounting for this offset is irrelevant to the right of offset. Marianna is Claimant's employer, and it is entitled to the offset.

Although this was not a merger governed by Section 1929, the principles of *LTV Steel Co.*, 562 Pa. 205, 754 A.2d 666, have direct application. To hold otherwise would effectively erase Marianna's contributions to Claimant's pension. It would also result in a windfall for Claimant in violation of Section 204(a) of the Act, 77 P.S. § 71(a).

For all of the foregoing reasons, we affirm the order of the Board denying Claimant's review offset petition.

Judge BROBSON did not participate in the decision in this case.

### ORDER

AND NOW, this 10th day of September, 2014, the order of the Workers' Compensation Appeal Board, dated December 3, 2013, in the above-captioned matter is hereby AFFIRMED.

---

7. No doubt Marianna was charged its fair share of the group's cost to provide workers' compensation to the employees of the FairPoint subsidiaries.