Philips Respironics,              :
          Petitioner        :
                                 :
        v.                 :
                                 :
Workers' Compensation Appeal  :
Board (Mika),               :   No. 1317 C.D. 2019
          Respondent     :   Submitted: April 17, 2020


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE COVEY                     FILED: May 22, 2020


        Philips Respironics (Employer) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) August 29, 2019 order reversing the Workers' Compensation Judge's (WCJ) decision suspending Thomas Mika's (Claimant) wage loss benefits as of September 1, 2017, and affirming the WCJ's decision in all other respects. Employer presents one issue for this Court's review: whether Claimant removed himself from the workforce.

        On June 1, 2015, Claimant sustained a work-related injury, described as a left shoulder strain and sprain, which Employer accepted by a medical-only Notice of Temporary Compensation Payable that converted to a medical-only Notice of Compensation Payable by operation of law. On March 17, 2016, Claimant filed a Claim Petition, alleging that he was entitled to wage loss benefits as of August 3, 2015 and ongoing. On August 31, 2017, Employer filed a Petition to Terminate Compensation Benefits (Termination Petition), asserting that Claimant was fully recovered as of June 21, 2016. The WCJ held hearings on May 6, July 8, September

12, October 24, and December 7, 2016, and February 3, May 22, September 1, and November 3, 2017.

On April 16, 2018, the WCJ granted Claimant's Claim Petition and denied Employer's Termination Petition. The WCJ concluded that Claimant sustained work-related left shoulder impingement syndrome. However, the WCJ suspended Claimant's WC benefits as of August 3, 2015, because Claimant resigned from his modified-duty position for reasons unrelated to his injury. The WCJ also found that Claimant was entitled to wage loss benefits as of August 11, 2016, but suspended them as of September 1, 2017, because Claimant did not meet his burden of proving that his work injury forced him out of the entire labor market. Finally, the WCJ concluded that Employer failed to meet its burden of proving that Claimant's injuries fully ceased.

Employer and Claimant appealed to the Board. On August 29, 2019, the Board reversed the WCJ's decision suspending Claimant's wage loss benefits as of September 1, 2017, and affirmed the WCJ's decision in all other respects. Employer appealed to this Court.[1]

Employer argues that the Board erred by reversing the WCJ's decision suspending Claimant's wage loss benefits as of September 1, 2017, because the WCJ's finding that Claimant removed himself from the workforce was supported by the record facts.

---

[1] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014). "Substantial evidence has been defined as such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*

Initially,

> [i]t is clear that disability benefits must be suspended when a claimant voluntarily leaves the labor market upon retirement. The mere possibility that a retired worker may, at some future time, seek employment does not transform a voluntary retirement from the labor market into a continuing compensable disability. An employer should not be required to show that a claimant has no intention of continuing to work; such a burden of proof would be prohibitive. *For disability compensation to continue following retirement, a claimant must show that he is seeking employment after retirement or that he was forced into retirement because of his work-related injury.*

*City of Pittsburgh v. Workers' Comp. Appeal Bd. (Leonard)*, 18 A.3d 361, 364 (Pa. Cmwlth. 2011) (quoting *Se. Pa. Transp. Auth. v. Workmen's Comp. Appeal Bd. (Henderson)*, 669 A.2d 911, 913 (Pa. 1995)).

This Court has expounded:

> We recognize that there may be circumstances where a claimant may be forced to retire from his or her time-of-injury job due to a work-related injury, but may not be disabled from other type[s] of work. In that situation, **the claimant must show that he** or she has not voluntarily withdrawn from the entire *labor market* and **is open to employment within his** or her **physical capabilities in order to be entitled to benefits under the** [**WC Act**[2]].

*Cty. of Allegheny v. Workers' Comp. Appeal Bd. (Weis)*, 872 A.2d 263, 266 (Pa. Cmwlth. 2005) (bold emphasis added) (quoting *Shannopin Mining Co. v. Workers' Comp. Appeal Bd. (Turner)*, 714 A.2d 1153, 1155 n.5 (Pa. Cmwlth. 1998)).

Our Supreme Court has further instructed:

> If the employer produces sufficient evidence to support a finding that the claimant has voluntarily left the workforce, then the burden shifts to the claimant to show that there in fact has been a compensable loss of earning power.

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

Conversely, if the employer fails to present sufficient evidence to show that the claimant has retired, then the employer must proceed as in any other case involving a proposed modification or suspension of benefits.

*City of Pittsburgh v. Workers' Comp. Appeal Bd. (Robinson)*, 67 A.3d 1194, 1209-10 (Pa. 2013).

In the instant case, on **September 1, 2017**, Claimant testified:

Q. Okay. **Have you looked for work since you were last here before the [WCJ]**?

A. **No, sir**.

Q. Okay. Has your -?

A. **I'm a stay[-]at[-]home dad**.

Q. Okay. You've made a decision to be a stay[-]at[-]home dad?

A. Right now with my shoulder injury and with the - the limitations of certain things that I'm able to do in the work force, I'm - I'm not be - I mean I don't have no trade or -

Q. Sure.

A. - professional, you know, college, anything like that. So warehouse work was my main income.

Q. Okay. But just to review. You - **you think you can do something**. **You haven't applied for work and the reason you haven't applied for work is partially because of your shoulder and your partial disability**. **But partially because you decided it was better to be a stay[-]at[-]home dad**.

A. **Partially**.

Q. Okay. Let me ask - let me - let me phrase it this way. **If you didn't have kids**, if no one had to care - if you didn't have children at all, you would have tried to come - **if you were to try and find some kind of work that was consistent with your current restrictions**?

A. **If it was just myself, yes**.

4

Q. Okay.

A. For the simple fact I don't need to provide so much income for a family.

Reproduced Record (R.R.) at 330a-331a (emphasis added).

In addition, on November 3, 2017, Claimant related:

Q. Okay. The other question I have for you is **I think last time we were here, there was testimony that you had not looked for work. Is that still the situation**?

A. No, sir. **I'm pretty much staying at home**.

Q. So you made a decision to stay at home. And I think you had responsibility to your children?

A. I made the decision that was in my best interest not to try to work at a fast food restaurant or something that would be less weight bearing on my arm versus making $8[.00], and stay home and take care of the children.

Q. Okay. So it's a financial decision? You feel like you could get a lower-paying job in fast food or something, but you decided you'd rather hold out for a manufacturing job because the wages are better?

A. Once my shoulder gets better, I would love to go back to work.

R.R. at 281a (emphasis added). Claimant clarified:

A. Well, what I'm stating is that the job that I've done my whole life I can no longer do. And it's what paid the bills. Now I would have to sacrifice that and work a lower end job where I couldn't meet the bills.

And so therefore, we made the decision that it was better for me to stay at home and take care of the children while the wife went to work.

Q. Okay. And so **your wife returned to work**. **You're now the primary care[-]giver for the kids**?

A. **Yes, sir**.

5

Q. Okay. But that was - what I'm hearing is at least in large part, **that was a financial decision**?

A. **Yes**.

Q. I guess what I'm getting at is **you're not telling the [WCJ] you're totally disabled. There's** [sic] **certainly things you could do and certain jobs you could do**, but unless -.

A. **Yes, sir. I'm not saying I'm completely disabled, no**.

R.R. at 282a-283a (emphasis added).

Based on the above testimony, the WCJ determined:

As of September 1, 2017, Claimant had voluntarily withdrawn from the workforce.

Claimant's testimony on this point is credible. He testified on May 6, 2016[,] that he was then applying for jobs. But he testified on September 1, 2017[,] and again on November 3, 2017[,] that he had stopped looking for work, in part due to his shoulder condition and in part due to the economics of his personal situation. He did not testify that he was forced out of the entire workforce by his shoulder problems. Rather, he acknowledged that there was work he could do, but he chose not to pursue it due to personal financial considerations.

R.R. at 38a-39a (Finding of Fact No. 16). Accordingly, the WCJ ordered: "Wage loss benefits are suspended as of September 1, 2017." R.R. at 40a.

The Board opined:

We disagree that Claimant unequivocally stated that he was leaving the workforce, either by quitting or by retiring. In fact, the WCJ found that Claimant was a 'stay-at-home dad' partially because of his work-related injury, the limitations on certain things he could do in the work[]force because of that injury, and his lack of professional or college training. (Finding of Fact No. 13). **These statements are not unequivocal that Claimant stated his intention to permanently remove himself from the workforce, but rather, realistic issues regarding finding work because of his work-related injury**.

6

> Additionally, the WCJ accepted Dr. Smith's expert medical opinion of Claimant's physical limitations as of August 11, 2016, and [**Employer**] **presented no evidence of available work within his restrictions or expert testimony regarding his earning power**. [*Robinson*]. Because *Henderson* is factually distinct from the instant case and, furthermore, **Claimant's admission that he was not looking for work is not sufficiently unequivocal that he has no intention to seek[] future employment**, we reverse the WCJ's [d]ecision regarding a suspension of Claimant's wage[]loss benefits as of September 1, 2017.

R.R. at 60a-61a (emphasis added).

An employer is not required to show that a claimant does not intend to continue to work. *Leonard.* Rather, an employer only has to prove that, although claimant may be forced to retire from his time-of-injury job due to his work-related injury, he was not disabled from other types of work. *Weis.*

Here, Claimant unequivocally testified that he had stopped looking for work, in part due to his shoulder condition and in part due to the economics of his personal situation. Because Claimant acknowledged that there was work he could do, but he chose not to pursue it due to personal financial considerations, Employer was not required to present evidence of available work within Claimant's restrictions or expert testimony regarding Claimant's earning power. Accordingly, the Board erred by reversing the WCJ's decision suspending Claimant's wage loss benefits as of September 1, 2017.

For all of the above reasons, the portion of the Board's order reversing the WCJ's decision is reversed.

_____
ANNE E. COVEY, Judge

7

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Philips Respironics,                     :
        Petitioner               :
                                      :
        v.                       :
                                        :
Workers' Compensation Appeal            :
Board (Mika),                            :     No. 1317 C.D. 2019
        Respondent               :

## O R D E R

AND NOW, this 22nd day of May, 2020, the portion of the Workers' Compensation Appeal Board's August 29, 2019 order reversing the Workers' Compensation Judge's decision suspending Thomas Mika's wage loss benefits as of September 1, 2017, is reversed.


_____
ANNE E. COVEY, Judge