IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sarangbe Keita, :
            Petitioner :
           :
      v. : No. 667 C.D. 2020
        : SUBMITTED: February 5, 2021
Workers' Compensation Appeal :
Board (Elwyn Inc.), :
            Respondent :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                           FILED: June 17, 2021

      Sarangbe Keita (Claimant) petitions this Court for review of the June 23, 2020 Order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ). The WCJ, Kathleen DiLorenzo (Judge DiLorenzo), granted the termination petition of Elwyn, Inc. (Employer) after finding that Claimant had fully recovered from her January 1, 2006 work injury. The issue before this Court is whether Employer demonstrated that Claimant's physical condition, both orthopedic and neurologic, had changed from an October 17, 2012 decision (2012 Adjudication) rendered by WCJ Carl Lorine (Judge Lorine), who concluded that Claimant had not fully recovered from her work injury. After careful review, we affirm.

## I. Background

      Claimant sustained injuries to her head, neck, right shoulder, and lower back on January 1, 2006, when she was assaulted by a patient while working for Employer

as a residential counselor. Reproduced Record (R.R.) at 84a. In a decision circulated on December 12, 2006, a WCJ awarded Claimant total disability benefits for her work injury, which consisted of sprains to her cervical, dorsal, and lumbar spine, and posttraumatic headaches. *Id.* at 84a, 215a. A second adjudication circulated on April 17, 2008, adopted a stipulated agreement of the parties, which expanded Claimant's work injury to include the following: concussion syndrome with cognitive dysfunction; posttraumatic encephalopathy; cervical, thoracic, and lumbar strain syndrome with somatic dysfunction; lumbar facet syndrome; bilateral occipital neuralgia; and fibromyositis. *Id.*

## A. 2010 Adjudication

On September 10, 2008, Employer filed petitions to modify and suspend Claimant's benefits on the basis of a labor market survey, which indicated that various jobs within Claimant's abilities were available to her. *Id.* at 63a. In a January 27, 2010 adjudication (2010 Adjudication), Judge DiLorenzo dismissed Employer's petitions after finding that, while Claimant could perform some work, Employer failed to establish that the jobs identified in the labor market survey were either available or within Claimant's abilities. *Id.* at 61a-81a.

Relevant to the instant matter, Judge DiLorenzo credited the testimony of Claimant's treatment provider, Daisy Rodriguez, M.D., that Claimant suffered from the following conditions: concussion syndrome; cognitive dysfunction; post-traumatic encephalopathy; strains of the cervical, thoracic, and lumbar areas; somatic dysfunction of the lumbar area; lumbar facet syndrome; bilateral occipital neuralgia; contusions of the head, neck, shoulder, and low back; sprain of the trapezius; bulging discs at the C5-6, C6-7, L4-5, and L5-S1 levels; shoulder and knee sprains; and chronic pain. *Id.* at 69a. On the basis of Dr. Rodriguez's testimony,

2

Judge DiLorenzo also found that Claimant had "a diagnosis of dementia not otherwise specified." *Id.* at 67a. However, Judge DiLorenzo disagreed with Dr. Rodriguez's opinion to the extent that she attributed all of Claimant's diagnosed conditions to the January 1, 2006 work injury. *Id.* As to the nature of Claimant's work injury, Judge DiLorenzo found that Claimant "had the diagnosed conditions in accordance with the [December 12, 2006 and April 17, 2008 adjudications,]" which consisted of sprains to her cervical, dorsal, and lumbar spine; posttraumatic headaches, concussion syndrome with cognitive dysfunction; posttraumatic encephalopathy; cervical, thoracic, and lumbar strain syndrome with somatic dysfunction; lumbar facet syndrome; bilateral occipital neuralgia; and fibromyositis *Id.* at 67a, 84a.

## B. 2012 Adjudication

In early 2012, Employer filed petitions to terminate and modify Claimant's benefits, based on the results of an independent medical examination (IME) performed on March 10, 2011, indicating that Claimant had fully recovered from her work injuries, as well as a May 26, 2011 impairment rating evaluation (IRE) performed by Vinit Pande, M.D., who assigned Claimant a total body impairment rating of nine percent. *Id.* at 85a, 89a. In disposing of Employer's petitions, Judge Lorine found that Claimant's compensable injuries consisted of the following diagnoses, as established by the December 12, 2006 and April 17, 2008 adjudications: concussion syndrome with cognitive dysfunction; posttraumatic encephalopathy; cervical, thoracic, and lumbar strain syndrome with somatic dysfunction; lumbar facet syndrome; bilateral occipital neuralgia; and fibromyositis. *Id.* at 84a.

3

Judge Lorine credited the testimony of Claimant's treatment provider, George Rodriguez, M.D., who opined that Claimant had not fully recovered from her work injury and that additional testing was required to assess her cognitive difficulties. *Id.* at 94a, 96a-97a. This testimony was corroborated by Dr. Pande, who found evidence of muscle spasm in Claimant's cervical, thoracic, and lumbar spine. *Id.* at 95a. Judge Lorine discredited the live testimony of Employer's medical expert, Howard Levin, M.D., in part because Dr. Levin only examined Claimant one time, and his testimony that abnormalities identified in a June 13, 2007 electroencephalogram (EEG) report were insignificant conflicted with his later admission that those abnormalities were consistent with traumatic brain injury. *Id.* at 95a. Judge Lorine also found that Dr. Levin's manner and demeanor were "not that of a credible witness." *Id.* Claimant's testimony that she had difficulty concentrating and remembering details such as her children's birthdates was found to be credible in its entirety. *Id.* at 94a. Accordingly, Judge Lorine dismissed Employer's termination petition on the basis that Claimant had not fully recovered from her work injuries. *Id.* at 98a. He also dismissed Employer's modification petition because Dr. Pande's IRE failed to consider all diagnoses related to Claimant's accepted work injury.[1] *Id.* at 96a, 98a.

---

[1] Employer filed a second modification petition on July 8, 2015, following a February 24, 2015 IRE, which assigned Claimant a total body impairment rating of 39%. R.R. at 219a, 221a. A WCJ credited the testimony of Employer's medical expert and granted Employer's petition, thereby modifying Claimant's disability status from total to partial. *Id.* at 220a-21a. The Board, however, reversed this decision following the Supreme Court's ruling in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017), which declared as unconstitutional the IRE provisions set forth in former Section 306(a.2) of the Workers' Compensation Act (Act). R.R. at 8a; *see* Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. § 511.2, repealed by the Act of October 24, 2018, P.L. 714, No. 111 (Act 111).

### C. 2018 Termination Petition

On December 5, 2018, Employer filed a second termination petition alleging that Claimant had fully recovered from her work injury. *Id.* at 1a. In support of its petition, Employer presented the deposition testimony of Lee Harris, M.D., and Dennis McHugh, D.O. Claimant testified on her own behalf and offered the deposition testimony of Dr. Daisy Rodriguez.

### 1. Employer's Evidence

Dr. Harris, a board-certified neurologist, evaluated Claimant on June 8, 2018. *Id.* at 227a, 233a. Claimant advised Dr. Harris that she was injured when a patient attacked her, but she could not provide any other details, such as whether she was knocked to the ground or lost consciousness, or which parts of her body were struck. *Id.* at 234a-35a. Claimant experienced daily headaches, which she described as a shooting pain originating in the back of her head. *Id.* at 235a. She also described 8 out of 10 pain radiating down her neck into her arms. *Id.* Claimant treated her symptoms with pain medication; however, she could not identify the specific medication she took. *Id.* Otherwise, Claimant was not currently seeking treatment from a physician for her work injury, and she could not recall when she last treated with a physician. *Id.* Claimant advised that she suffered from constant low back pain, which she rated a 9 out of 10, and she had trouble with mobility. *Id.* at 236a. She reported having memory problems but could not say how long she had experienced such problems or whether they had gotten worse over time. *Id.*

Dr. Harris reviewed a May 2007 computed tomography (CT) scan of Claimant's brain, which was normal. *Id.* at 237a. He also reviewed the IME report prepared by Dr. Levin in response to Employer's 2012 termination petition. *Id.* at

5

239a-40a. Dr. Levin's report noted that the June 13, 2007 EEG indicated diffuse and left parietal occipital slowing; however, a subsequent 48-hour EEG from July 2007 was normal. *Id.* at 239a. Dr. Levin opined that Claimant's neurology records from 2006 through 2008 showed no objective evidence of neurological or neurocognitive impairment. *Id.* at 240a.

Upon physical examination, Claimant demonstrated good range of motion in her neck. *Id.* at 241a. While Claimant expressed tenderness to light touch along her entire spinal column, Dr. Harris detected no appreciable spasm. *Id.* Claimant's cranial nerves functioned normally. *Id.* at 242a. She displayed poor effort at manual muscle testing with "virtually every muscle in both upper and lower extremities." *Id.* Dr. Harris noted that poor effort during muscle testing, as well as diffuse tenderness to light touch, is a common sign of symptom magnification. *Id.* at 242a-43a. Claimant demonstrated "severely limited" range of motion in her lumbar spine, which Dr. Harris opined was within Claimant's control. *Id.* at 242a. Her cerebellar function, evaluated by means of a finger-to-nose test, revealed normal coordination. *Id.* at 243a; Certified Record (C.R.), Item No. 23. Claimant walked slowly with the assistance of a cane. R.R. at 243a. Claimant displayed diminished sensation in her fingers, palms, and wrists, but normal sensation in both legs. *Id.*

Based on his examination and review of Claimant's medical records, Dr. Harris opined that Claimant had recovered from the neurologic effects of her January 1, 2006 work injury, which consisted of concussion syndrome with cognitive dysfunction and posttraumatic encephalopathy.[2] *Id.* at 244a, 246a. He noted that the records from Claimant's neurologist described normal neurocognitive function for "at least the first year or two" following the work injury. *Id.* at 244a. Dr. Harris

---

[2] Dr. Harris did not offer an opinion with respect to Claimant's orthopedic condition.

6

believed that Claimant's delayed onset of cognitive difficulties was the opposite course one would expect of a person recovering from a concussion or posttraumatic encephalopathy. *Id.* While Dr. Harris acknowledged that Claimant exhibited a decline in cognitive function, he did not link it to the January 1, 2006 work injury, as the effects of a concussion would have been immediate and then improve over time, with symptoms gradually resolving within a few months. *Id.* at 249a, 263a. Dr. Harris could not say whether Claimant's symptoms had resolved in that manner, as he did not examine her during that period. *Id.* at 263a.

Claimant's counsel questioned Dr. Harris's reliance on the IME report of Dr. Levin, whose testimony was entirely discredited by Judge Lorine in the 2012 Adjudication. *Id.* at 252a. Dr. Harris responded that his medical opinions were based on his understanding of neurology and the "medical facts of the case." *Id.* at 252a-53a. He nonetheless found Dr. Levin's report noteworthy, as it discussed medical records that revealed no evidence of neurological impairment. *Id.* at 252a. Dr. Harris conceded that he did not review the actual records discussed by Dr. Levin and, thus, could not verify Dr. Levin's interpretations thereof. *Id.* at 254a.

Dr. Harris agreed that "some patients" with concussions do not improve, and he recognized that Claimant appeared to have suffered a decline in function. *Id.* at 249a, 255a-56a. He did not link this decline to the work injury, however, and opined that her cognitive decline could not be explained based on a concussion or post-concussion syndrome. *Id.* at 249a, 254a.

Dr. Harris opined that Claimant's condition had changed from the 2012 Adjudication due to the "passage of several years" and the lack of objective findings from the June 8, 2018 IME. *Id.* at 249a. Dr. Harris did not dispute Claimant's condition following Claimant's work injury, as her diagnoses were made "long

7

before [he] saw her." *Id.* at 270a. While Dr. Harris believed that Claimant's progress following the work injury was inconsistent with the "expected course of concussion or posttraumatic encephalopathy," he iterated that he did not examine Claimant until June 8, 2018. *Id.* As of that date, Dr. Harris opined that Claimant was fully recovered from the neurologic conditions related to her work injury. *Id.*

Dr. McHugh, an orthopedic surgeon, performed a second IME on November 20, 2018. *Id.* at 286a, 288a. Claimant advised Dr. McHugh that she was struck on the head, neck, back, and shoulders during a work-related incident. *Id.* at 287a. She could not recall any specifics relating to her cervical, thoracic, lumbar, or neurological issues. *Id.* at 287a, 294a. She likewise could not remember the names of physicians who treated her or what treatments they provided. *Id.* at 287a-88a. Claimant was able to relate that she suffered from headaches, pain which radiated from her neck to her arms and from her lower back to her legs, and numbness in her extremities. *Id.* at 294a-95a. Claimant's husband assisted her with showering, dressing, and taking her pain medication. *Id.* at 295a-96a.

Dr. McHugh reviewed the medical records from Dr. Rodriguez, which included September 2006 magnetic resonance imaging (MRI) scans of Claimant's lumbar and cervical spine. *Id.* at 297a. Those studies were normal. *Id.* A subsequent MRI taken in 2008 revealed the presence of bulging discs at the lumbosacral and cervical region of Claimant's spine. *Id.* Dr. McHugh deemed unremarkable a May 2008 CT scan of Claimant's head. *Id.* at 296a. Dr. McHugh also reviewed Dr. Levin's IME report from the 2012 Adjudication and the IME report prepared by Dr. Harris. *Id.* at 298a.

Dr. McHugh's physical examination of Claimant revealed pain throughout her entire cervical spine, even to light touch. *Id.* at 300a. He did not observe any spasm.

8

*Id.* Claimant indicated she felt pain in her lower back during the range-of-motion maneuvers performed on her cervical and thoracic spine. *Id.* at 300a, 303a. Dr. McHugh had no explanation for the low back pain Claimant expressed during those tests, as "[t]here should be no stress load with that examination." *Id.* He was similarly unable to explain the low back pain Claimant alleged she felt when Dr. McHugh pushed down on Claimant's shoulders. *Id.* at 301a. Claimant was able to move her fingers appropriately; however, she made no effort during the grip strength test. *Id.* at 301a-02a. Claimant was unable to lift her shoulders beyond 80 degrees due to pain, but she could not identify where that pain originated. *Id.* at 302a.

Although Claimant was able to stand and walk using a single-point cane, indicating she had a four out of five strength in all the major muscle groups, she could "barely lift" her legs and feet while seated, which would indicate a minimum strength of three. *Id.* at 305a-06a. Claimant complained of severe low back pain when asked to lift her legs and feet while seated and she refused to perform the straight leg test due to anticipatory pain. *Id.* at 305a-06a. Claimant experienced low back pain when flexing her ankles in a seated position, which Dr. McHugh could not explain from an objective standpoint, as such a maneuver should not recreate low back pain. *Id.* at 307a. Claimant could only flex her left ankle by 10 degrees, and she was unable to flex her right ankle. *Id.* Dr. McHugh noted that Claimant did not demonstrate "foot-drop" while walking, a finding Dr. McHugh would have expected in light of Claimant's inability to flex her ankles. *Id.* Although Claimant walked with a right-sided "jump gait," suggesting she was trying to alleviate pressure on the right side, she complained of left foot pain when exiting the room. *Id.* at 304a-05a. She complained of right hip pain when reentering the room. *Id.* at 305a. Dr. McHugh opined that Claimant's performance during the physical exam suggested

9

symptom magnification. *Id.* He based this belief on her "complete lack of effort" made during the strength tests. *Id.* at 308a. Although Claimant was unable to move her lower extremities while seated, she was able to stand and walk during other portions of the evaluation. *Id.*

Dr. McHugh reviewed a November 6, 2018 report from Matthew Tormenti, M.D., who evaluated Claimant's orthopedic condition. *Id.* at 313a. Dr. McHugh observed that Dr. Tormenti's physical examination of Claimant was similarly limited due to her inability to perform physical activities. *Id.* Dr. Tormenti reported that Claimant made a poor effort due to pain and she was a poor historian with regard to her prior medical treatment. *Id.* Dr. Tormenti noted that Claimant presented with "apparent" cognitive issues. C.R., Item No. 17. Given the lack of recent imaging studies, Dr. Tormenti recommended that Claimant obtain MRIs of her brain and cervical and lumbar spine. *Id.* A subsequent MRI of Claimant's brain dated November 15, 2018, indicated no mass, acute infarction, or abnormal enhancement. C.R., Item No. 22. MRIs of Claimant's lumbar and cervical spine, also dated November 15, 2018, were largely unremarkable and revealed no presence of herniated discs or spinal stenosis. *Id.*

Based on his physical examination and review of Claimant's medical records, Dr. McHugh opined that Claimant had fully recovered from the diagnoses relating to her orthopedic condition, which consisted of cervical, thoracic, and lumbar strain syndrome with somatic dysfunction, lumbar facet syndrome, bilateral occipital neuralgia, and fibromyositis.[3] R.R. at 310a-12a. With specific regard to Claimant's fibromyositis, Dr. McHugh explained that diagnosis does not apply to an individual

---

[3] Dr. McHugh did not render an opinion with regard to any of Claimant's neurologic diagnoses.

with chronic whole-body pain or unexplained pain in multiple body systems. *Id.* at 319a. Rather, fibromyositis involves "an inflammatory discomfort secondary to muscle inflammation." *Id.* at 319a. In Claimant's case, Dr. McHugh attributed her fibromyositis to those muscle systems in which she had symptomatic problems; namely, her cervical, thoracic, and lumbar spine. As Dr. McHugh observed no evidence that Claimant suffered from muscle inflammation, he opined that she had recovered from this condition. *Id.* at 311a. During cross-examination, Dr. McHugh agreed that, if one considered fibromyositis a condition involving chronic whole-body pain, Claimant had not fully recovered. *Id.* at 319a.

As to Claimant's bilateral occipital neuralgia, Dr. McHugh described this condition as "an irritation of the . . . base of the skull at the top of the cervical spine." *Id.* at 311a. Dr. McHugh pointed to the lack of clinical evidence demonstrating that Claimant still suffered from that condition as the basis for his opinion of full recovery. *Id.* He agreed on cross-examination that the headaches Claimant described correlated with a diagnosis of occipital neuralgia. *Id.* at 325a. Dr. McHugh reiterated, however, that there was no evidence to support a continued diagnosis of occipital neuralgia. *Id.* at 341a. Dr. McHugh recognized that Claimant's multiple diagnoses might cause a delay in her recovery; however, in his clinical experience, the symptoms related to those diagnoses would not continue 13 years after the original traumatic event. *Id.* at 330a, 336a. Dr. McHugh understood that Claimant had not fully recovered at the time of the 2012 Adjudication. *Id.* at 242a. However, based on the passage of time and the results of his physical examination, Dr. McHugh found no "pertinent reproducible objective issues that would substantiate that [Claimant] wasn't fully recovered." *Id.* at 342a.

## 2. Claimant's Evidence

Claimant testified before Judge DiLorenzo on January 23, 2019. Claimant agreed that she had not sought treatment for her symptoms for "a couple of years," but she could not recall the reason she stopped treatment. *Id.* at 42a. She did not feel capable of working for Employer as she continued to feel pain in her back and neck, which radiated into her legs and arms. *Id.* Claimant continued to suffer from headaches and numbness in her hands, and her husband must assist her with going to the bathroom, showering, dressing, and taking her medication. *Id.* at 43a. Claimant had five children, several of whom were born after she sustained the work injury. *Id.* at 46a. Her youngest child was "a few months" old, but Claimant could not remember the child's date of birth. *Id.* Claimant's husband took care of the children because she could not. *Id.* at 45a-46a. While Claimant was able to recall her job duties and the circumstances of her work injury, she could not identify the hospital where she recently gave birth, or the name of her children's pediatrician. *Id.* at 41a, 48a-49a. Claimant acknowledged having an appointment with Dr. Tormenti, her "lawyer's doctor," but Claimant was unsure how many times she visited him, what happened during those appointments, or whether Dr. Tormenti prescribed her any medication. *Id.* at 50a-51a.

Dr. Rodriguez testified by deposition on July 15, 2019. She first treated Claimant on October 21, 2008. *Id.* at 128a. At that time, Claimant complained of severe, constant headaches and neck, back, and shoulder pain which radiated into her extremities. *Id.* at 132a. Claimant was lethargic and stated that she slept approximately 18 hours each day. *Id.* She was "poorly responsive" to Dr. Rodriguez's questions, which Claimant's husband answered for her. *Id.* at 131a. Claimant's husband expressed concern with her short-term memory and advised Dr.

12

Rodriguez that he had to watch Claimant constantly, as she would forget to turn off the stove and lock the door. *Id.* at 131a-32a. Claimant required assistance with activities of daily living, such as bathing, as she had weakness and pain in her upper extremities. *Id.* at 132a.

Dr. Rodriguez last treated Claimant on January 3, 2012. Claimant's symptoms had largely remained the same during her course of treatment, and she continued to require assistance from her husband to accomplish "most if not all daily activities." *Id.* at 133a-34a. Dr. Rodriguez described the treatment she provided as "palliative," which aimed to maintain Claimant's existing function and to prevent a worsening of her condition. *Id.* at 135a.

At the request of Claimant's counsel, Dr. Rodriguez examined Claimant on March 12, 2019. *Id.* at 136a. Claimant relayed that she continued to suffer the same symptoms she exhibited in 2012. *Id.* Dr. Rodriguez found that Claimant's range of motion in her neck was poor and limited in the back, and she noted spasm and tenderness at the base of Claimant's neck. *Id.* at 136a-37a. Claimant required assistance to get on and off the examination table and she had difficulty walking. *Id.* at 138a. Dr. Rodriguez did not perform a neurological exam. *Id.* Overall, Dr. Rodriguez felt that Claimant presented as weaker and more forgetful than she had in 2012. *Id.* at 140a. Dr. Rodriguez opined that Claimant continued to suffer from all conditions attributed to the January 1, 2006 work injury, and those conditions had not improved. *Id.* at 143a-47a.

Dr. Rodriguez admitted that she did not review Claimant's MRI films, only the reports generated from those films, and her opinion that Claimant had not recovered was largely based on Claimant's self-reported symptoms. *Id.* at 144a-47a, 152a-53a.

### 3. Decisions Below

Judge DiLorenzo granted Employer's termination petition on January 31, 2019. *Id.* at 18a. Judge DiLorenzo deemed Claimant's testimony with regard to the circumstances of her work injury and her job duties credible. *Id.* at 15a. Judge DiLorenzo found Claimant's testimony that she had not recovered from the work injury not credible in light of the testimony from Drs. Harris and McHugh, which Judge DiLorenzo credited. *Id.* Judge DiLorenzo found Drs. Harris and McHugh more credible than Dr. Rodriguez, as they had better credentials for evaluating Claimant's neurologic and orthopedic conditions. *Id.* The lack of objective clinical findings to substantiate Claimant's symptoms supported a finding that she had fully recovered from her work injuries. *Id.* at 16a.

Claimant appealed to the Board, arguing that Employer failed to demonstrate that her condition had changed from the 2012 Adjudication, in which Judge Lorine dismissed Employer's previous termination petition after finding that she had not fully recovered from her work injury. Claimant also argued that Employer failed to establish she had fully recovered from all conditions related to her work injuries, including dementia.

The Board rejected Claimant's argument with regard to a change in her condition, as Judge DiLorenzo's findings were based on the credited testimony of Drs. Harris and McHugh. *Id.* at 28a. The Board also rejected Claimant's argument that Employer failed to establish her recovery from dementia. *Id.* at 30a. While the Board acknowledged that Judge DiLorenzo made a general finding in the 2010 Adjudication that Claimant had been diagnosed with dementia, she made no finding that it was work-related, and Claimant's work injury was not expanded to include

14

that diagnosis. *Id.* at 29a-30a. Accordingly, the Board affirmed Judge DiLorenzo's decision. *Id.* at 31a.

## II. Issues

On appeal,[4] Claimant argues that the Board erred in affirming Judge DiLorenzo's decision because (1) Employer failed to establish that Claimant had fully recovered from all conditions related to her January 1, 2006 work injuries, including dementia, and (2) Employer failed to establish that her condition had changed from the date of the 2012 Adjudication.[5]

## III. Discussion
## A. Additional Work Injuries

First, we address whether Claimant's accepted work injuries included a diagnosis of dementia and whether Judge DiLorenzo was required to find that Claimant had fully recovered from that condition. Claimant contends that Judge DiLorenzo's finding in the 2010 Adjudication that Claimant "had a diagnosis of dementia not otherwise specified" implicitly expanded the scope of her work injury. R.R. at 67a.

To succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability ceased or that any remaining

---

[4] This Court's review is limited to determining whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence. *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

[5] We have re-ordered Claimant's arguments, as we must first resolve whether Judge DiLorenzo's decision contemplated all conditions attributed to Claimant's work injuries before we address whether Employer demonstrated a change in her condition.

15

conditions are unrelated to the work injury. *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). To the extent a WCJ makes findings that a claimant has not recovered from additional work injuries not previously accepted, those injuries become part of the accepted injury. *Mino v. Workers' Comp. Appeal Bd. (Crime Prevention Ass'n)*, 990 A.2d 832, 839 (Pa. Cmwlth. 2010). Therefore, to prevail on a subsequent termination petition, the employer must establish that the claimant has fully recovered from these additional injuries. *Id.*

Having reviewed the entire record, we cannot agree that Claimant's work injuries were expanded, implicitly or otherwise, to include a diagnosis of dementia. In adjudicating Employer's 2012 termination petition, Judge DiLorenzo credited Dr. Rodriguez's testimony that Claimant suffered from several conditions beyond those related to her work injuries. As to the conditions related to the work injuries, however, Judge DiLorenzo expressly found that Claimant "had the diagnosed conditions in accordance with the previous [adjudications.]" R.R. at 67a. Moreover, during her July 1, 2009 deposition, Dr. Rodriguez omitted dementia from the list of conditions she attributed to Claimant's work injury. In the 2012 Adjudication, Judge Lorine reiterated Claimant's established diagnoses as follows: concussion syndrome with cognitive dysfunction; posttraumatic encephalopathy; cervical, thoracic, and lumbar strain syndrome with somatic dysfunction; lumbar facet syndrome; bilateral occipital neuralgia; and fibromyositis. *Id.* at 84a. Dementia is noticeably absent from that list.

The nature and extent of Claimant's work injuries has been iterated in six separate adjudications authored by several different WCJs. Only the April 17, 2008 adjudication expanded her work injury to include diagnoses beyond those

16

established in the December 12, 2006 adjudication. There is simply no support in the record for Claimant's assertion that her dementia diagnosis was attributed to the January 1, 2006 incident. Accordingly, Employer was not required to prove, nor was Judge DiLorenzo required to find, that Claimant had fully recovered from dementia.

## B. Change in Condition

Having concluded that Claimant's work injuries do not include a dementia diagnosis, we turn to whether Employer established a change in Claimant's orthopedic and neurologic conditions so as to justify a termination of her benefits. Relying on the Supreme Court's decision in *Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 919 A.2d 922 (Pa. 2007), Claimant argues that Employer's evidence was legally insufficient to support a termination of benefits because it failed to demonstrate that her condition had changed since the 2012 Adjudication. Claimant contends that Employer's medical evidence merely reflects the passage of time from the 2012 Adjudication, and not a change in her physical condition.

In *Lewis*, our Supreme Court held that, in order to terminate compensation benefits on the basis that a claimant's disability has decreased, an employer "must show a change in physical condition since the preceding disability adjudication." *Lewis*, 919 A.2d at 926. It is not sufficient for an employer to merely challenge the diagnosis of a claimant's injuries as determined in a prior proceeding. *Id.* at 928. Rather, the employer must accept the claimant's prior adjudicated condition and work forward in time to show full recovery at a later date. *Folmer v. Workers' Comp. Appeal Bd. (Swift Transp.)*, 958 A.2d 1137, 1143-44 (Pa. Cmwlth. 2008). A simple finding that the claimant has fully recovered is insufficient. *Delaware Cnty. v.*

17

*Workers' Comp. Appeal Bd. (Browne)*, 964 A.2d 29, 36 (Pa. Cmwlth. 2008). There must be a factual finding that the claimant's physical condition changed from the time of the last disability adjudication. *Id.* A claimant's change of condition is any change in her physical wellbeing that affects her ability to work. *Browne*, 964 A.2d at 33.

In *Folmer*, a post-*Lewis* decision of this Court, the employer's first termination petition was denied on the basis that the claimant continued to suffer pain from the work injury. *Folmer*, 958 A.2d at 1145. In a subsequent termination proceeding, a WCJ found that the claimant had fully recovered. This finding was based on the testimony of the employer's medical expert, who was unable to corroborate the claimant's subjective complaints with any objective findings, and who testified that the claimant's range of motion, muscle composition, reflexes, strength, sensation, and MRI report were normal. *Id.* at 1140-41. To the extent the test results were abnormal, the medical expert opined that the claimant had magnified his symptoms. *Id.* at 1140. The WCJ granted the employer's termination petition, and the Board affirmed. *Id.* at 1142. This Court affirmed the Board, as disposition of the matter rested on the WCJ's rejection of the claimant's evidence and acceptance of the medical evidence presented by the employer. *Id.* at 1145. While the claimant was found to be suffering from pain in the first termination proceeding, he was found to be free of pain in the second. *Id.* These findings satisfied the change in physical condition required under *Lewis*.

While Claimant challenges the WCJ's findings in regard to her overall physical condition, we shall address the orthopedic and neurologic aspects of her condition separately.

18

### 1. Claimant's Orthopedic Condition

Instantly, the testimony of Dr. McHugh established a change in Claimant's orthopedic condition. In the 2012 Adjudication, Judge Lorine found that Claimant continued to suffer from the effects of her January 1, 2006 work injuries based on the credited testimony of Dr. Pande, who observed muscle spasm in Claimant's thoracic and lumbar spine. By contrast, Dr. McHugh "did not appreciate any spasms" during the November 20, 2018 IME. R.R. at 300a.

Claimant is correct that Dr. McHugh's opinion regarding a change in Claimant's condition relied in part on the passage of time. However, Dr. McHugh also testified to the lack of clinical evidence to support a conclusion that she continued to suffer from the orthopedic conditions related to her work injuries. Regarding Claimant's fibromyositis, Dr. McHugh elaborated on the lack of inflammation in her cervical, thoracic, and lumbar spine that would have indicated a continued presence of that condition. This testimony, which Judge DiLorenzo found credible, sufficiently demonstrates a change in Claimant's orthopedic condition. The WCJ, as factfinder, has the exclusive authority over the credibility of witnesses and the weight given the evidence. *Rogele, Inc. v. Workers' Comp. Appeal Bd. (Hall)*, 198 A.3d 1195, 1204 (Pa. Cmwlth. 2018). This Court may not reweigh the evidence, or the WCJ's credibility determinations, and a WCJ's credibility determinations will be upheld on appeal unless made arbitrarily or capriciously. *Id.*

### 2. Claimant's Neurologic Condition

We reach a similar conclusion with regard to Claimant's recovery from the neurologic effects of her work injuries, as, much like our decision in *Folmer*, this

19

issue is resolved by Judge DiLorenzo's credibility determinations, which we will not revisit. *Rogele, Inc.*, 198 A.3d at 1204.

In adjudicating Employer's 2012 termination petition, Judge Lorine found that Claimant had not recovered from her work injury, based on the credited testimony of her treatment provider and the presence of clinical findings, which corroborated his opinion that she had not recovered. Here, Judge DiLorenzo credited the opinion of Dr. Harris, who testified that the effects of concussion and cognitive dysfunction and posttraumatic encephalopathy would have improved over time, and his physical examination of Claimant revealed no objective findings that she continued to suffer from these diagnoses. Thus, the Act's requirement of proving a change in condition since the last determination has been met.

## IV. Conclusion

Claimant's argument that her work injury was expanded to include a diagnosis of dementia finds no support in the record, and we cannot grant her relief on that basis. Judge DiLorenzo's finding that Claimant had fully recovered from the diagnoses related to her orthopedic and neurologic conditions is supported by the credited testimonies of Drs. McHugh and Harris, which also establish a change in Claimant's condition from the 2012 Adjudication. Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

20

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sarangbe Keita,                   :

          Petitioner      :

                         :

      v.               :  No. 667 C.D. 2020

                         :

Workers' Compensation Appeal  :

Board (Elwyn Inc.),         :

          Respondent   :

# **O R D E R**

AND NOW, this 17th day of June, 2021, the June 23, 2020 Order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____

ELLEN CEISLER, Judge